## ELIZABETH FREDERICK

*v.*

## ADAM EWRIG.

1. CLOUD UPON TITLE—*paper, when its office is performed, if a cloud, will be decreed to be surrendered.* A paper which has performed its office, the continued existence of which may operate as a cloud upon the title of another party, will, by courts of equity, be decreed to be delivered up and canceled, or, if necessary, a conveyance of the property will be compelled.

2. REDEMPTION—*or an assignment.* Where property has been sold under a mortgage and the equity of redemption conveyed, and the grantee of the equity of redemption applies to the holder of the certificate of the mortgage sale for leave to redeem the property, after the expiration of twelve months from the day of sale, and the holder of the certificate, as a matter of favor, and for the purpose of permitting a redemption, and for no other purpose, accepts the amount due on the certificate and endorses and delivers the certificate to the owner of the equity of redemption, this is a redemption, and, after that, the certificate is null and void, and can not be used as the basis of a title.

WRIT OF ERROR to the Circuit Court of Clinton county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. WINKELMAN & HAY, for the plaintiff in error.

Mr. G. VAN HOOREBEKE, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This record is brought here, by a writ of error to the circuit court of Clinton county, to reverse a decree rendered by that court, in favor of Adam Ewrig, complainant, and against Elizabeth Frederick, defendant, the object of which was to enjoin certain actions of ejectment commenced by Elizabeth Frederick to recover possession of certain lands claimed by complainant, and to remove the cloud upon his title cast thereon by the claims and pretensions of the defendant.

Issues were made up and the cause heard on the pleadings and evidence, and a decree rendered against the defendant as prayed, to reverse which she prosecutes this writ of error.

The important questions raised on the record are two; and, first, what was the nature of the transaction with Nichols, in regard to the disposition made of the certificate of purchase held by him? and, second, had defendant a homestead right in the premises, and is the decree erroneous, because the same was not secured to her by the decree?

To understand these propositions, it is necessary the facts should be distinctly stated.

On the 15th of February, 1864, one Alvah Lewis was the owner of the lands, the subject of this controversy, who, on that day, sold and conveyed the same to John Frederick, the husband of plaintiff in error, taking from him, at the same time, a mortgage to secure the payment of some four thousand dollars of the purchase money. On the 9th of August, 1865, John Frederick and his wife conveyed these lands to his brother Nicholas, who, with his wife, on the same day, conveyed the same to plaintiff in error.

At the May term, 1869, of the Clinton circuit court, the mortgagee, Lewis, for the use of one William Nichols, sued out a writ of *scire facias* to foreclose this mortgage, and such proceedings were had that a judgment passed for the mortgage debt, and a special execution issued to the sheriff to sell these lands. The sheriff duly executed the writ, and sold the lands to William Nichols for the mortgage money, something over four thousand dollars, to whom the sheriff delivered the usual certificate of purchase, bearing date October 9, 1869.

At this date, the land having been conveyed to plaintiff in error by the deed of Nicholas Frederick and wife of August 9, 1865, she had the equity of redemption. Holding this equity, she had a right, under the statute, to pay Nichols the purchase money, with interest at the rate of ten per cent, and thus relieve the land from the sale. But this right was to be exercised within twelve months after the sale. In thirteen months after the sale an application was made to Nichols by Joseph Abend, acting as the agent of Mrs. Frederick, upon which, upon the interpretation to be given to it, this controversy mainly hinges.

If we understand the ground assumed by the plaintiff in error, she contends, her application to Nichols was not to redeem the land, but to procure a transfer of the certificate of purchase from Nichols. To enable her to raise the money to do this, it became necessary to apply to Abend, a real estate broker, who found the Karrs, Adam and Peter, with funds to loan. The money was advanced by the Karrs on the joint note of Mrs. Frederick and John Frederick, Sr., and his son, Nicholas Frederick, secured by a deed of trust signed by John Frederick, Jr. and the plaintiff in error, in which Joseph Abend and Henry Abend were constituted the trustees. The interest on these notes was paid by Mrs. Frederick. Subsequently, the certificate of purchase issued to Nichols came into the possession of the Karrs as explained in the testimony. It appears, on November 11, 1870, as Nichols testifies, Joseph Abend came to him at his house and told him he was acting for Mrs. Frederick and wanted to redeem these lands from his purchase, and was told the time of redemption had expired and that he would have to redeem as a judgment creditor. Abend then said he wanted to redeem them for the benefit of Frederick's wife. Nichols then told him he would let him redeem, and gave him the certificate with his name endorsed, he understanding it was for the benefit of Mrs. Frederick, without which he would not so have acted. If Nichols is to be believed, and there is no question on that point, the object, and the only object, in applying to him was to effect a redemption of these lands, and that by the grantee of the judgment debtor and mortgagor, she having at that time the right to make the application to redeem, being possessed of the equity of redemption. It is true, Nichols put his name on the back of the certificate, and says he transferred all the interest he had in it to somebody, and, probably, to Abend, he saying he was redeeming for the woman.

There was no formal transfer of any right Nichols had in the lands, or of his interest in the certificate of purchase, Nichols acting on the representations of Abend to effect a redemption for the woman, he receiving his money and interest at the rate of

ten per cent. We do not understand certificates of purchase are in their nature like commercial paper, which can be and are transferred from the payee to another by the endorsement of the payee's name. We understand when application is made by the holder of an equity of redemption, to the holder of a certificate of sale, to redeem the lands described from the sale, and a redemption is effected, the certificate is *functus officio*, and is no longer valid for any purpose. The statute is clear on this point: "and on such sum being paid, the said sale and the certificate therefor given shall be null and void." R. S. 1845, chap. 57, title "Judgment and Execution." There can be no doubt, then, there was a redemption of these lands intended to be effected by Abend for the benefit of Mrs. Frederick, who was, at the time, the grantee of the mortgagor and judgment debtor.

It appears, after the certificate was so procured with Nichols' name on the back, a formal assignment was written over his name, purporting to vest the interest in the Karrs, and the same delivered to them, not as a muniment of title, or a means of acquiring title through it, but as further security for the money they had advanced to Mrs. Frederick to enable her to redeem the lands. But if the statute we have quoted is of any force, the certificate was of no force; the land having been redeemed, it was null and void. It is very clear, we think, Nichols did not consider, when he agreed to a redemption, and gave the certificate to Abend, he was so transferring it. so that at some future time a title might be obtained under it. The intention with which an act is done must be ascertained, if it can be, from the transaction itself and the surrounding circumstances. It is quite apparent, Nichols' acts were prompted by the fact a woman was in the case whom he desired to benefit. His sympathies were aroused, and being a woman, he waived the advantage which he had, more than one year having expired, and permitted her to redeem the lands. He had no idea he was conferring upon her, or upon any one else, the power to get the title to these lands by force of the certificate.

It is claimed, by the defendant in error, that if the certificate was in full life after this transaction with Nichols, it never came to the possession of the Karrs for any other purpose than as security for the money they advanced to redeem the lands; that they did not suppose they were taking a step to acquire the title to these lands. This is shown from the testimony of the Karrs. They constantly insisted they did not want the lands, and bought the certificate to secure the money, and Peter Karr testifies he kept the certificate until he got his money.

It will be remembered, this arrangement with Nichols was made November 11, 1870. Karr's loan to Mrs. Frederick, through Abend, was for two years, and tacitly extended beyond that time, and not fully paid by Mrs. Frederick until the 18th of June, 1874, when the Karrs made a quitclaim deed to her, they having obtained a deed from the sheriff on this certificate on the 4th day of June, a fortnight previously. It is very clear, from the testimony of all the witnesses, the Karrs, Mr. Frederick and Ewrig, that this certificate was held by the Karrs as security merely, and they had given Mrs. Frederick a writing to redeliver it to her when the loan was discharged, neither of these parties contemplating anything else, not one of them then entertaining the idea that a title should grow up out of it. Peter Karr testifies he kept the certificate until the money was paid; why, then, it being in their hands as security only, and they bound by contract to redeliver it, did they change their arrangements, and procure a sheriff's deed? The facts will show.

Mrs. Frederick, under the deed of August 9, 1865, from Nicholas Frederick and wife to her, relied in perfect security on her title thus acquired, subject to no disturbance other than that which might result from the mortgage executed by her husband to Alvah Lewis, of February 15, 1864—all other claims she felt certain she could defy.

But she was not secure, for on the 15th of November, 1872, John Frederick, who had conveyed this land to his brother Nicholas, was, on his own petition, adjudged by the proper court a bankrupt, and his estate, real and personal, assigned

to one George Swaggard in due form, who, thereupon, became entitled to the same.

One Remick, a creditor of the bankrupt, commenced proceedings in the United States District Court for the Southern District of Illinois, making said Frederick, Swaggard his assignee, Mrs. Frederick the plaintiff in error here, and Nicholas Frederick, parties defendant, the object of which was to set aside the deed made by John Frederick and wife to Nicholas Frederick, and the deed from the latter to plaintiff in error, of the date of August 9, 1865, for these lands, as fraudulent and void; and on the sixth day of April, 1874, a decree was entered in said suit, setting the said deeds aside, and declaring the lands therein conveyed to be assets of John Frederick, and ordering the same to be sold to pay his debts.

It may be remarked here, in reply to a suggestion of plaintiff in error that the Karrs were not a party to these proceedings, that there was no necessity they should be parties, as they had not a particle of interest in any matters therein litigated and adjudged.

The assignee, Swaggard, proceeded to the performance of his duties, and sold the lands to Adam Ewrig, the defendant in error, for thirteen thousand five hundred dollars, being their full value.

These proceedings in the United States Court must have filled Mrs. Frederick and her advisors with astonishment, as her title to the land acquired in 1865 was taken from her, and the redemption from Nichols would avail nothing. Other arrangements were necessary. Swaggard, the assignee, before he sold the lands, having heard the Karrs had this certificate, some ten days before the sale called upon Adam Karr to ascertain the amount of his claim, which he stated to be about five thousand dollars. The assignee informed him he would sell the land in a few days, and come and pay off his claim. Karr said all he wanted was his money—that he did not want the land. After the sale, the assignee went to Karr with the money to pay his claim, and he said he had conveyed to Mrs. Frederick a few days before. This was the consummation of

the plan, made necessary by the action of the Federal Court, and we are asked to sanction it, and to hold that thereby plaintiff in error became vested with the legal title to these lands, and Ewrig, the purchaser at the assignee's sale, after paying more than thirteen thousand dollars for the lands, acquired nothing. Armed with this deed from the Karrs, obtained under the circumstances stated, the plaintiff in error commenced a series of actions against those in possession under the defendant in error, rendering an injunction necessary, and a removal of this deed as a cloud upon his title indispensable.

We are satisfied the application by Mr. Frederick's agent to Nichols was to redeem these lands, and nothing more, and though the time for redeeming had expired, he yielded to female entreaty, and permitted her to redeem, from which time the certificate of purchase became and was null and void —that it was not the intention and design of these parties, at that time, to use the certificate as a basis of title; and we are also satisfied, even if it had not spent its force, the Karrs held it as security for their loan, and were under obligations to deliver it up to plaintiff in error, on the payment of the loan. This they did not do, but, to further the plans of plaintiff and her advisors, when they were informed by the assignee he was about to sell the lands and would pay them, and when he came in a few days thereafter with the money to pay them, he was informed they had conveyed the lands to the plaintiff in error.

This was not according to the agreement, understanding and intention of the parties. A paper which has performed its office, yet whose existence may operate as a cloud upon the title of another party, will, by courts of equity, be decreed to be delivered up and canceled, or compel a re-conveyance of the property, if necessary. *Redmond et al.* v. *Packenhum et al.* 66 Ill. 434. This principle is under an old head of equity jurisdiction, but as we can not act upon the certificate, we can decree and determine, in conformity with the decision of the court below, the sheriff's deed to the Karrs, and their deed to plaintiff in error, to be fraudulent, null and void, and that the same be canceled.

24—82D ILL.

Upon the other point, as to the right of homestead, we are satisfied, being a party to the fraudulent conveyance to Nicholas Frederick, under which she claimed title, deprives her of a right to claim a homestead. Besides, the District Court of the United States, in the bankruptcy proceedings, had a right to set off a homestead right, and it is fair to presume that subject was adjudicated by that court. But if it was not, this decree would not be reversed for an omission to set it off. as that can be done hereafter, should plaintiff in error establish a right.

The decree gives her largely more than she is entitled to receive, but as there are no cross-errors assigned, we can not interfere in this regard. She has decreed to her all the money she paid to redeem these lands, with ten per cent interest on the amount, and has enjoyed the rents and profits of these valuable lands to her own use, without being required to account for one dollar thereof. This is quite as much as the demands of justice and equity can accord. A different decree, as demanded by plaintiff in error, would deprive the defendant in error of thirteen thousand five hundred dollars, the price paid for the lands, with no recourse upon any one.

As to the claim of plaintiff in error, that a part of the moneys paid on this land came to her from her father's estate, and she therefore has an equity to that extent, the answer is, one thousand dollars so came to her in 1856 or 1857, she being then married, and, by the law then in force, the same became the property of her husband, and could be appropriated by him to his own use, raising no equity in her behalf.

It is further complained, the decree does not find the allegations of the bill to be true. This is hardly necessary, when all the evidence is contained in the record, and we can see from it if the court reached correct conclusions.

It is also insisted by plaintiff in error, as the bill does not claim costs they can not be recovered. *Carter* v. *Lewis*, 29 Ill. 500, is cited in support of this proposition. We do not think the case sustains the objection. That was a creditor's bill, in which judgments of different amounts were set out,

claiming only those amounts. This court held, as interest and costs on them were not claimed, those items could not be allowed in the decree.

We are satisfied with the decree of the circuit court in this case as doing justice to the parties, and affirm the same.

*Decree affirmed.*

Mr. Justice Dickey: I can not concur in the positions taken in this opinion, nor in the judgment.

Mr. Justice Walker, dissenting:

That Abend, Nichols, the Karrs and Mrs. Frederick all understood that there was not a redemption, is manifest from the fact that the certificate of purchase was assigned by Nichols and delivered to the Karrs as, and was held for, security for the money they advanced to Mrs. Frederick to purchase the certificate, and was regarded by all parties as an assignment and not as a redemption. I, therefore, hold, that Mrs. Frederick was a purchaser, and became entitled to hold the fee under the deed from the Karrs; and I am unable to concur either in the reasoning or conclusion announced in the opinion of a majority of the court.

Mr. Chief Justice Sheldon: I concur with Mr. Justice Walker that the transaction with Nichols was an assignment by him of the certificate of purchase.