In re McGUIRE.

(District Court, N. D. Ohio, E. D.   May 4, 1905.)

No. 1,852.

SUBROGATION—PAYING INCUMBRANCE FOR ANOTHER—AGREEMENT FOR SUB-
ROGATION.

One who, at the request of a debtor, furnishes the money to discharge
a lien, under an agreement that he shall have the same lien, is entitled
in equity to be subrogated to the lien of the creditor whose debt is paid.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Subrogation, § 61.]

In Bankruptcy.   On review of decision of referee.

C. P. Winbigler, for claimant.

J. W. Mykrantz, for trustee.

TAYLER, District Judge.   This matter is before the court on the
petition of the trustee for the review of the decision of the referee
with reference to the claim of G. A. Cassell.

The facts in the case are as follows:   McGuire, the bankrupt, in
October, 1902, purchased a farm for $3,500, giving in payment $500
in cash, and six notes for $500 each, the first payable April 1, 1904,
and the others annually thereafter, the notes being secured by mort-
gage on the farm.   The mortgagee transferred the first three notes.
When the first note became due, Cassell, at the request of the mort-
gagor, and upon the mortgagor's promise to turn over to him this
first note, advanced to the mortgagor the money with which to pay
the note, which was taken up by McGuire and given to Cassell.
There seems to have been some argument between McGuire and
Cassell on the one hand, and the agent of the holder of the note on
the other, at the time of the negotiations for payment of the note,
the latter refusing to assign the note, and stating that he would
mark it "Paid"; but at the time of the payment no such indorsement
was made.

Cassell claims that he is entitled to be subrogated to the rights of
the original payee of the note under the mortgage executed by Mc-
Guire to secure it, and this claim is disputed by the trustee.   The
contention of the claimant was sustained by the referee.

The doctrine of subrogation will be applied, in general, wherever
any person, other than a mere volunteer, pays a debt or demand
which, in equity and good conscience, should have been satisfied by
another.   Was Cassell, in the dealings above recited, a mere vol-
unteer?   In the case of Home Savings Bank v. Bierstadt, 168 Ill.
618, 48 N. E. 161, 61 Am. St. Rep. 146, the court says:

"Subrogation, as a principle of equity jurisprudence, is generally confined
to the relation of principal and surety and guarantors, or to a case where
a person is compelled to remove a superior title to that held by him in order
to protect his own, and also to cases of insurers. * * * Whilst these
general heads include the doctrine and principles of subrogation, that doc-
trine has been steadily expanding and growing in importance and extent in
its application to various subjects and classes of persons. This equitable
principle is enforced solely for the accomplishment of substantial justice,
where one has an equity to invoke which cannot injure an innocent person.

The right of subrogation which springs from the mere fact of the payment of a debt, and which is included under the heads first above stated, is what is termed legal subrogation, and exists only where included within those classes. But, in addition to this principle of legal subrogation, there exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied with the expectation of receiving an equal lien. * * * It is the agreement that the security shall be kept alive for the benefit of the person making the payment which gives the right of subrogation, because it takes away the character of a mere volunteer."

In the case of Wilkins v. Gibson, 113 Ga. 31, the court says, on page 43, 38 S. E. 374, 379, 84 Am. St. Rep. 204:

"In a case where a stranger pays off the debt of another which is secured by deed or mortgage, the parties have a right to agree that the payor will have the same priority as the holder of the security, and be substituted for him.' A court of equity will enforce this agreement as made, and give the second creditor just such security as he contracts for."

The Circuit Court of Appeals for the Fifth Circuit, in the case of Rachal et al. v. Smith et al., 101 Fed. 159, 164, 42 C. C. A. 297, 302, says:

"Since the equitable doctrine of subrogation was ingrafted on the English equity jurisprudence from the civil law, it has been steadily growing in importance, and widening in its sphere of application. It is a creation of equity, and is administered in the furtherance of justice. It is applied to give the party who actually pays the debt the full benefit and advantage of such payment. It has been long settled, and it is not controverted, that the doctrine applies where a junior incumbrancer discharges the prior incumbrance, and where the surety pays the debt of his principal, and in cases of like character. A just limitation of the application of the doctrine is that it does not apply to payments made by a mere volunteer or stranger. 'No one can be allowed to intrude himself upon another as his surety; and therefore if a man voluntarily pays the debt of another, without any agreement to that effect with the debtor, he cannot take the place of the creditor, or in any way recover the money so paid of the debtor, because the law does not permit one man thus officiously and without solicitation to intermeddle with the affairs of another.' Winder v. Diffenderfer, 2 Bland, 199; Harris, Subr. p. 558, § 810, note 'h.' This objection is made in the present case. It is urged that Francis Smith, in advancing the money to pay the mortgages, was a mere volunteer within the meaning of the authorities, and that the doctrine of subrogation, therefore, does not apply. It will be remembered that the money was lent and applied to the payment of the mortgages at the request of the debtor, the new mortgage being taken on the same lands covered by the older mortgages."

The court quotes further from Harris, Subrogation, p. 559, § 811, note 1, as folllows:

"A person who has lent money to a debtor may be subrogated by the debtor to the creditor's rights; and if the party who has agreed to advance the money for the purpose employed it himself in paying the debt, and discharging the incumbrance on land given for its security, he is not to be regarded as a stranger. Dix. Subr. 165; Payne v. Hathaway, 3 Vt. 212. The real question in all such cases is whether the payment made by the stranger was a loan to the debtor through a mere desire to aid him, or whether it was made with the expectation of being substituted in the place of the creditor. If the former is the case, he is not entitled to subrogation; if the latter, he is. If a person pays a debt at the instance, request, or solicitation of the debtor, he is neither a volunteer, stranger, nor intermeddler; nor is the

debt regarded as extinguished, if justice requires that it should be kept alive for the benefit of the one advancing the money, who thereby becomes the creditor. Association v. Thompson, 32 N. J. Eq. 133."

Pomeroy, in his work on Equity Jurisprudence (1883) § 1212, after stating the general rule as to subrogation or equitable assignment in cases of payments made by persons who have subsequent interest in the premises, adds:

"The doctrine is also justly extended by analogy to one who, having no previous interest and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit. Such a person is in no true sense a mere stranger and volunteer."

In the case of Straman v. Rechtine et al., 58 Ohio St. 443, 455, 51 N. E. 44, 46, the Supreme Court of Ohio says:

"Where money is loaned under an agreement to be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money cannot be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which the money supplied by him has paid, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released."

I am of the opinion that the facts in the case under consideration clearly entitle Cassell to the relief claimed, and the decision of the referee is therefore affirmed.