## POWERS v. PENSE ET AL.
### (No. 684.)

HOMESTEAD—LIENS—PRIORITY—PURCHASE-MONEY MORTGAGE—FORE-CLOSURE SALE—LIEN AND TITLE OF PURCHASER—SUBROGATION.

1. A mortgage executed by a grantee to a third person as security for money loaned for paying the purchase price of a homestead, as well as a purchase-money mortgage executed to the grantor, has, in equity, precedence over any prior general lien, and is superior to the homestead right of the mortgagor, without any statutory provision therefor, and it is immaterial that the wife or husband of the grantee did not join in the execution of the mortgage or that the right of homestead is not expressly waived or released by a recital to that effect in the mortgage or in the certificate of acknowledgment.

2. In such case a statute requiring an express waiver or release of the homestead right to be contained in the instrument to create a lien upon the premises as against such right does not apply.

3. Where a mortgage for purchase money has been given at the time of the purchase, a change in the form of the security, or the substitution of a new mortgage, does not affect the rule in equity giving to a purchase-money mortgage precedence over the homestead right of the mortgagor, although the new or substituted mortgage is executed to a third party for money advanced or loaned for the purpose of paying off the original mortgage.

4. A purchaser at the foreclosure sale of a purchase-money mortgage acquires all the lien of such mortgage and the same precedence over the homestead right as that held by the mortgagee.

5. While the purchaser at a mortgage foreclosure sale does not have the legal title until the redemption period has expired, and is not until then entitled to a deed or possession, and during the redemption period has only a lien which may ripen into full legal title, his title upon receiving a deed will relate back to the time of the execution of the mortgage, and take effect by virtue of the original deed or mortgage, so as to cut off all subsequent liens and interests created by the parties.

6. While upon a mortgage foreclosure sale, where the property is sold for enough to pay the mortgage debt, such debt, as the personal obligation of the mortgagor, is extinguished by the sale, it remains for the purpose of supporting the lien of the purchaser, and as a conditional obligation attached to the right of redemption; the mortgage deed in such case determines the character and dignity of the lien acquired by the purchaser at the sale.

7. A husband bought property for a homestead, securing the greater part of the purchase price by a mortgage upon the property executed by himself and wife. Upon default the mortgage was foreclosed and the property sold, whereupon the husband and wife again borrowed money from the grantor to redeem from the sale under circumstances showing an understanding that a first lien upon the property would be given for the borrowed money, and executed as security a mortgage wherein it was recited that the wife expressly waived her homestead right, but there was no such recital as to the homestead right of the husband. Default occurring under the later mortgage, the property was again sold on foreclosure and a certificate of sale issued. *Held,* that said second mortgage might properly be considered one given to secure the payment of purchase money, but that even if said last mortgage was defective, the purchaser at the foreclosure sale, under the principle of equitable assignment by subrogation, acquired a lien equal to that of the first mortgage and superior to the homestead right, and that the wife, not having paid or offered to pay at least the amount necessary to satisfy the prior lien, could not prevail in a suit to quiet her title as against such purchaser.

[Decided May 24, 1912.]                    (123 Pac. 925.)

ERROR to the District Court, Sheridan County; HON. CARROLL H. PARMELEE, Judge.

The action was brought by Lillie Powers against John W. Pense and J. D. Powers for the purpose of quieting the title of the plaintiff to certain premises claimed by her as a homestead. Judgment was rendered for the defendants and the plaintiff prosecuted error. The material facts are stated in the opinion.

*Burgess & Kutcher (Camplin & O'Marr* of counsel), for plaintiff in error.

The second mortgage did not operate to convey or release the homestead right, there being no recital therein that both the husband and wife released or waived the right of homestead, as required by section 3662, Compiled Statutes, 1910, nor did the certificate of acknowledgment contain any such clause. By the constitutional provision such clause was necessary to render the mortgage a valid lien against the homestead. (Const., Art. 19, Sec. 1; Brewster v. Madden, 15 Kan. 249; Hart v. Sanderson, 18 Fla. 103; U. S. Sav. F. Co. v. Harris, 40 N. E. 1072.) The consent of either husband or wife alone to the alienation of the homestead is of no effect. (Jones v. Losekamp, 114 Pac. 675; Leonard v. Crane, (Ill.) 35 N. E. 474; Ogden B. & L. Ass'n. v. Mensch, (Ill.) 63 N. E. 1050.) Upon the findings of fact the second mortgage was not an obligation contracted for the purchase of the premises, within the purview of section 1, Art. 19 of the Constitution, and in concluding that it was such an obligation the district court erred. Said mortgage was not an extension or renewal of the original purchase-money mortgage, for the indebtedness which it secured had been paid to the mortgagee and the mortgage itself had been released and discharged by foreclosure proceedings. Had it been a renewal or extension the liability would have been continuous. It was not a mortgage given for the purpose of paying off the purchase-money mortgage, for that had been paid through the foreclosure. It was nothing more than a mortgage given to redeem from the sale under the original pur-

chase-money mortgage. Such a mortgage is not "an obligation contracted for the purchase of the premises." (Handford v. Edwards, (Ark.) 115 S. W. 1143; Sav. Bank v. Carroll, (Ia.) 80 N. W. 683; Carey v. Boyle, (Wis.) 11 N. W. 50; Austin v. Underwood, 37 Ill. 438; Magee v. Magee, 51 Ill. 500; Eyster v. Hatheway, 50 Ill. 521; Dreese v. Myers, (Kan.) 34 Pac. 350; Perry v. Ross, (Cal.) 37 Pac. 757; Amick v. Amick, (S. C.) 37 S. E. 39; Loftis v Loftis, (Tenn.) 28 S. W. 1091.)

The mortgage is also invalid as to any excess over the homestead, because such excess cannot be severed from the homestead without destroying the same by sale of the whole premises; it is only where the excess can be separated from the homestead without material injury, and without sale of the entire premises, that the mortgage not good as to the homestead is good as to the excess. (Bank v. Bank, 11 Wyo. 132; Jones v. Losekamp, supra; Engle v. White, 62 N. W. 154; Cooper v. Cooper, 127 N. W. 266; Wilson v. Wilson, (Neb.) 120 N. W. 147; Weitzner v. Thingstad, (Neb.) 56 N W. 817; McCreery v. Schaffer, (Neb.) 41 N. W. 996; Teske v. Dittberner, 98 N. W. 57; Edwards v. Simms, (Ariz.) 71 Pac. 202.) The homestead contemplated by the constitution, and provision for which has been made by law, is a home, a place of habitation beyond the reach of creditors, and the legislature cannot change or defeat the idea of the homestead as expressed in the constitution. If the mortgage could be held valid as to the excess over the homestead exemption then the value should be ascertained as of the date of the execution of the second mortgage and not as of the date of the sale. (Teske v. Dittberner, supra; Dye v. Mann, 10 Mich, 291, Bruner v. Hicks, (Ill.) 82 N. W. 888.)

While the mortgage may for some purposes be considered as creating merely a lien, our statutes classify it as a conveyance. Not only was the mortgage given but the property was sold under it and hence there was clearly an alienation. The plaintiff was not estopped; there can be no estoppel under the circumstances of this case. (Freirmuth

v. Steigleman, (Cal.) 62 Pac. 615; Planters &c. v. Dickinson, (Ga.) 10 S. E. 446.)

*S. P. Cadle, (W. E. Mitchell* of counsel) for defendant in error, Pense.

The provision of the constitution prohibiting the alienation of a homestead without the joint consent of husband and wife, when that relation exists, does not include a mortgage. (Fuller v. Hunt, 48 Ia. 163; Stark v. Duvall, (Okl.) 54 Pac. 453; Spiess v. Neuberg, (Wis.) 37 N. W. 417; Orr v. Stewart, (Cal.) 7 Pac. 693; Wilcox v. John, (Colo.) 40 Pac. 880; Shepherd v. Ins. Co., 38 N. H. 232; Judge v. Ins. Co., 132 Mass. 521; Bryan v. Ins. Co., (Mass.) 14 N. E. 454; Jackson v. Ins. Co., 23 Pick. 418; Hubbard v. Ins. Co., 33 Ia. 333; Sav. Bank v. Dubuque, 15 Ia. 394; Krider v. College, 31 Ia. 547; Orell v. Mfg. Co., 70 L. R. A. 881. citing many cases; Hoffmann v. Gross, 199 U. S. 342; Stark v. Morgan, (Kan.) 85 Pac. 567; Bass v. Buker, (Mont.) 12 Pac. 922.)

The mortgage under which the defendant in error purchased was an obligation contracted for the purchase price of the premises and is paramount to the homestead right under the provisions of the constitution, and it is therefore immaterial whether the homestead right was waived in the manner provided by the statute or not. (Carr v. Caldwell, 10 Cal. 380; Dillon v. Byrne, 5 Cal. 455; Hopper v. Parkinson, 5 Nev. 233; McWilliams v. Bones, (Ga.) 10 S. E. 724; Jones v. Parker, 8 N. W. 124; Kaiser v. Lembeck, 7 N. W. 517; Murry v. Davis, 5 S. W. 569; Kibby v. Jones, 70 Ky. 243; Acrumen v. Barnes, 66 Ark. 442; Johnston v. Arrendale, 71 S. W. 45; Ayres v. Probasco, 14 Kan. 141; Lumber Co. v. Bank, (Kan.) 80 Pac. 49; Nichols v. Overacker, 16 Kan. 54; White v. Wheelan, 71 Ga. 533; Dixon v. L. & Inv. Co., 40 S. W. 541; Prout v. Burk, (Neb.) 70 N. W. 512; Peterson v. Fisher, 124 N. W. 145.)

Where the title is in the husband he is not required to expressly waive the homestead right in the body of the deed conveying it, or in the acknowledgment; it is sufficient

if the wife make such waiver. The plaintiff having waived her homestead right cannot now take advantage of the fact that the right was not also expressly waived by her husband. (Lessee &c. v. Spencer, 21 Howard, 228; Hughes v. U. S. 4 Wall. 232; Orr v. Stewart, 67 Cal. 275; Cohn v. Hoffman, (Ark.) 6 S. W. 511; Clark v. Baker, 14 Cal. 612; Kirkaldie v. Larrabee, 31 Cal. 455; Sherman v. McCarthy, 57 Cal. 507; Land Ass'n. v. Vierra, 48 Cal. 572; Bank v. Cornell, 2 N. H. 324; Hibberd v. Smith, (Cal.) 4 Pac. 482.)

POTTER, JUSTICE.

This action was brought in the District Court by the plaintiff in error to quiet her title to certain real estate. She alleged that she was in possession of the property and the owner thereof in fee simple. The answer of each defendant alleged the execution and delivery of two mortgages by the plaintiff in error and her husband, the first on May 6, 1904, and the second on July 12, 1906, the foreclosure of the first mortgage, which was given for the purchase-money of the land; the redemption from the sale upon that foreclosure with money advanced for that purpose by the defendant, J. D. Powers, the holder of the second mortgage; the foreclosure of said second mortgage; and the purchase of the property at the foreclosure sale by the defendant, John W. Pense, and the issuance to him of a certificate showing such sale and purchase.

The case is here upon the pleadings, the findings of fact, conclusions of law, and the judgment, the evidence not being brought into the record. The facts as found by the trial court are substantially as follows: On May 6, 1904, the property was purchased by Alex Powers, the husband of the plaintiff, for the sum of $1,250. He paid at that time $200 in cash, and executed and delivered to the grantors a mortgage upon the property, in which the plaintiff joined, to secure the payment of the balance of the purchase price. That mortgage was a purchase-money mortgage, and the court so found. The property became the homestead of Alex Powers and his wife, the plaintiff, from

the fact that they resided upon it and claimed it as their homestead. The mortgage aforesaid was duly assigned to the defendant, J. D. Powers, and, upon default in the payment of the debt thereby secured, the mortgage was foreclosed by advertisement under the power of sale therein contained, and upon the foreclosure sale occurring January 13, 1906, Lizzie Holstein and James W. Kirkpatrick purchased the premises and received a certificate of sale issued by the sheriff, who made the sale, which certificate was duly filed for record. It is recited in the findings that "the indebtedness secured by said mortgage was thereby paid and said mortgage released and discharged." It was probably intended by that finding to show that the money received by the officer upon the sale was paid to the mortgagee, for it is stated as a finding of fact and not as a conclusion of law, and at that time the mortgagors had themselves paid nothing to satisfy the amount due upon the mortgage.

On July 12, 1906, Alex Powers and his wife, the plaintiff herein, borrowed from said J. D. Powers the sum of $1,650, and signed, executed and delivered to the Bank of Commerce of Sheridan, Wyoming, for the use and benefit of said J. D. Powers, a note and a mortgage upon the property aforesaid for that amount. The court found that said money was borrowed and the mortgage executed for the purpose of redeeming said premises from the foreclosure sale above mentioned, and that the money "was received by said Alex Powers and by him used to redeem said premises and by him paid to said Lizzie Holstein and James W. Kirkpatrick." This mortgage was duly recorded, and thereafter together with the note duly assigned to J. D. Powers, and the assignment was duly recorded. A default occurred in the payment of the amount so borrowed and secured, and the mortgage was foreclosed by advertisement and sale in the manner prescribed by law, the sale occurring November 1, 1909, and at said sale the defendant, John W. Pense, purchased the property for $2,460, and a certificate of sale was issued to him as required by law. There was no clause

in this mortgage or in the certificate of acknowledgment showing an express waiver or release of the right of homestead by Alex Powers. But the mortgage contained a clause reading as follows: "And the said Lillie Powers, wife of said Alex Powers, upon the consideration aforesaid, does hereby and forever quit claim unto the said party of the second part, its successors and assigns, all her rights of dower and homestead in and to the above granted premises." And in the certificate of acknowledgment it was recited that Lillie Powers, wife of said Alex Powers, was first examined separate and apart from her said husband in reference to the signing and acknowledging of such deed, that the nature and effect of the deed was explained to her, and that being fully apprised of her right and the effect of signing and acknowledging the instrument, she signed the same while separate and apart from her husband, and acknowledged that she freely and voluntarily signed and acknowledged the same for the uses and purposes therein set forth, and "expressly waived and released all her rights and advantages under and by virtue of all laws of said State of Wyoming relating to the exemption of homesteads." Alex Powers and his wife had continued to reside upon the premises and claimed the same to be their homestead when this mortgage was executed, and since that time the plaintiff has resided upon the premises with her family, claiming it to be her homestead. Some time subsequent to the date of said last mentioned mortgage Alex Powers deserted and abandoned his wife, and thereafter the plaintiff brought an action against her said husband in the District Court, the reply of the plaintiff showing that the action was for a divorce, and that a decree of divorce was entered in the action, and the court found that by the judgment in that action "all right, title, claim and interest of the said Alex Powers in and to the said premises, together with the improvements thereon, were duly transferred, conveyed and set over to this plaintiff, Lillie Powers." The value of the premises is found to have been as follows: On May 6, 1904, the date of the pur-

chase, $1,250. On July 12, 1906, the date of the last mort-
gage, $1,650, which was the amount of that mortgage; and
on November 1, 1909, the date of the last foreclosure sale,
$2,460, the amount of the accepted bid at that sale.

Upon these facts, the court found as conclusions of law,
First: That the mortgage of May 6, 1904, was paramount
to the homestead rights of Alex Powers and Lillie Powers,
the same being a purchase-money mortgage. Second: That
the mortgage of July 12, 1906, was paramount to said home-
stead rights, and that the premises were not exempt from
sale under such mortgage. Third: That said last mentioned
mortgage was an obligation contracted for the purchase of
said premises, and was valid notwithstanding defective exe-
cution, and that the defendant Pense is entitled to a deed
for the premises therein described. Judgment was there-
upon rendered in favor of the defendants, and the title was
quieted in the defendant, John W. Pense. The findings of
fact were not excepted to, but exception was taken to each
conclusion of law, and it is here contended that such conclu-
sions and the judgment are contrary to law and not sus-
tained by the findings of fact. It is argued in support of
this contention that the absence of a clause in the mortgage
of July 12, 1906, expressly waiving or releasing the home-
stead right of Alex Powers rendered it invalid or insufficient
as a release of the homestead, that such right was therefore
retained unincumbered, and that by the provision in the
divorce decree above mentioned the plaintiff has succeeded
to all the right and title of her former husband, and is the
owner of the property free from any lien or claim of the
defendants.

The Constitution of this state declares that a homestead
as provided by law shall not be alienated without the joint
consent of husband and wife, when that relation exists.
(Art. XIX, Sub-title "Homesteads," section 1.) It is pro-
vided by statute that the owner of a homestead may vol-
untarily sell, mortgage or otherwise dispose of or incumber
the same, but that every such sale, mortgage, disposal or

incumbrance shall be absolutely void, unless the wife of the owner or occupant, if he have any, shall, separate and apart from her husband, freely and voluntarily sign and acknowledge the instrument conveying, mortgaging, disposing of, or incumbering the homestead. (Comp. Stat., sec. 3662.) Also, by the statute prescribing a sufficient form for deeds and mortgages of real estate, it is provided that when the grantor or grantors in any such deed or mortgage desires to release or waive his, her or their homestead rights therein, they or either of them may release or waive the same by inserting in the form of deed or mortgage so prescribed in substance the following words: "hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state." (Laws 1895, Ch. 93, sec. 3; Comp-Stat., sec. 3668.) And that no deed or other instrument shall be construed as releasing the right of homestead, unless the same shall contain a clause expressly releasing or waiving such right, and in such case the certificate of acknowledgment shall contain a clause substantially as follows, "including the release and waiver of the right of homestead" or other words which will expressly show that the parties executing the deed or other instrument intended to release such right; and that no release or waiver of the right of homestead by the husband shall bind the wife unless she join in such release or waiver. (Laws 1895, Ch. 93, sec. 5; Comp Stat., sec. 3662.) By further express provision of the statute a homestead is not exempt from attachment or sale upon execution for the purchase money thereof. (Comp. Stat., sec. 4764.) And the Constitution, in the section above cited (Art. XIX, "Homesteads," sec. 1), provides that no property shall be exempt from sale "for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon."

At the time the mortgage in question was executed a homestead was provided for by law as follows: "Every householder in the State of Wyoming, being the head of a family, shall be entitled to a homestead, not exceeding in

value the sum of fifteen hundred dollars, exempt from exe-
cution and attachment arising from any debt, contract or
civil obligation entered into or incurred." (Rev. Stat.,
1899, sec. 3901.) "Such homestead shall only be exempt
* * * while occupied as such by the owner thereof, or
the person entitled thereto, or his or her family." (Id. sec.
3902.) And the statute continues to so provide, except that
the homestead right is now also·extended to every resident
of the state who has reached the age of sixty years whether
the head of a family or otherwise. (Comp. Stat., 1910, sec.
4755.) Real estate sold upon execution or the foreclosure
of a mortgage may be redeemed by the debtor or mortgagor
at any time within six months from the sale. (Laws 1895,
Ch. 95, secs. 3 and 12; Id. Ch. 113, sec. 1; Comp. Stat.,
1910, secs. 4735, 4745, 3678.) Upon the proper payment
of the amount necessary to effect a redemption, within the
time allowed, it is declared that the sale and the certificate
granted thereon shall be null and void. (Laws 1895, Ch.
95, sec. 3; Comp Stat. 1910, sec. 4735.) And in such case
a certificate of·redemption is required to be issued and re-
corded. (Laws 1895, Ch. 95, sec. 13; Comp. Stat., 1910,
sec. 4744.) A certificate of sale is assignable by endorse-
ment thereon, and the assignee becomes entitled to the same
benefits in every respect as the person named in the certifi-
cate would have been entitled to if it had not been assigned.
(Laws 1895, Ch. 95, sec. 8; Comp. Stat., 1910, sec. 4741.)
At the expiration of the redemption period, if the property
has not been redeemed, the purchaser is entitled to a deed.
(Laws 1895, Ch. 95, secs. 5, 9-11; Comp. Stat., 1910, secs.
4738, 4742, 4743.) Provision is also made for redemption
by judgment creditors within a limited period after the ex-
piration of the time allowed the debtor to redeem; but those
provisions are not here material.

It then appears that when the mortgage of July 12, 1906,
was executed and delivered, the property had been regularly
sold upon a foreclosure sale under a valid mortgage given
for purchase money, and that the mortgagors were allowed

but one more day in which to redeem, for the redemption period would have expired on July 13, 1906. The mortgage was given for the express purpose of procuring the money with which to redeem from such sale, and the money so procured and secured by the mortgage was actually used for that purpose. Without a statutory provision excepting purchase-money obligations from the exemption laws, it is a principle of equity that a purchase-money mortgage given at the same time as the deed, or as a part of the same transaction, has precedence over any prior general lien, and that for the same reason which gives it that precedence it is superior to the homestead right of the mortgagor. And that is so although the wife or husband of the vendee does not join in the execution of the mortgage, or the right of homestead is not expressly waived or released by a recital to that effect in the mortgage or in the certificate of acknowledgment. In such case a statute requiring an express waiver or release of the homestead right to be contained in the instrument to create a lien upon the premises as against such right does not apply. A like precedence is also given to a mortgage executed by the grantee to a third person as security for money loaned for the purpose of being used in paying the purchase price. (Pomeroy's Eq. Juris., 3rd Ed., secs. 725, 726; Waples on Homestead & Exemption, 331-346; 1 Jones on Mort., 6th Ed., secs. 468-470; 27 Cyc., 1180-1182; 15 Am. & Eng. Ency. L. 626; Nichols v. Overacker, 16 Kan. 54; Stow v. Tifft, 15 Johns (N. Y.) 458, 8 Am. Dec. 266; Carr v. Caldwell, 10 Cal. 380, 70 Am. Dec. 740; Jones v. Parker, 51 Wis. 218, 8 N. W. 124; Kaiser v. Lembeck, 55 Iowa 244, 7 N. W. 519; Austin v. Underwood, 37 Ill. 438, 87 Am. Dec. 254; Magee v. Magee, 51 Ill. 500, 99 Am. Dec. 571; Roby v. Nat'l. Bank, 4 N. Dak. 156, 59 N. W. 719, 50 Am. St. 633; Thomas v. Hanson, 44 Ia. 651; Roush v. Miller, 39 W. Va. 638, 20 S. E. 663; Cowardin v. Anderson, 78 Va. 88; Clark v. Munroe, 14 Mass. 351; Stewart v. Smith, 36 Minn. 82, 30 N. W. 430, 1 Am. St. Rep. 651; Thompson v. Lyman, 28 Wis.

266; New Jersey &c. Co. v. Bacheler, 54 N. J. Eq. 600, 35 Atl. 745.) In some of the cases cited the right of dower was asserted against the mortgage, and in others prior or intervening liens of other creditors were sought to be enforced. But whether the claim made in opposition to the mortgage be that of dower or homestead, or a creditor's lien, the reason for the application of the equitable principle stated is substantially the same. As was said in Stewart v. Smith, 36 Minn. 82, 30 N. W. 430, 1 Am. St. Rep. 651, "the doctrine which gives precedence in such cases to a purchase money mortgage is one of equity, and not of statutory origin, and applies to any claim to or lien upon the property arising through the mortgagors." A change in the form of the security, or the substitution of a new mortgage for the one given at the time of the purchase, does not affect the operation of the rule. (2 Pomeroy's Eq. Juris., secs. 725, 719 and note; 1 Jones on Mort., 6th Ed., sec. 927a; Jones v. Parker, supra; Bradley v. Curtis, 79 Ky. 327; Roush v. Miller, supra; Waples on Homestead & Exempt. 346, 348; Dillon v. Byrne, 5 Cal. 455.) And the principle is not rendered inapplicable by the fact that the new or substituted mortgage is executed to a third party for money advanced or loaned for the purpose of paying off the original mortgage. (Carr v. Caldwell, 10 Cal. 380, 70 Am. Dec. 740; Swift v. Kraemer, 13 Cal. 526, 73 Am. Dec. 603; McWilliams v. Bones, 84 Ga. 203, 10 S. E. 724; Bankers Loan Co. v. Hornish, 94 Va. 608, 27 S. E. 459; Zinkeisen v. Lewis, 63 Kan. 590, 66 Pac. 644; Allen v. Caylor, 120 Ala. 251, 24 So. 512, 74 Am. St. Rep. 31; Ogden v. Totten, (Ky.) 34 S. W. 1081.) The ground upon which it is held in some of the cases that a mortgage executed to a third party for money loaned at the time of the purchase for the purpose of paying the purchase price is a purchase- money mortgage is, that equity regarding substance rather than mere form will consider the transaction the same as if the property had been conveyed by the vendor to the lender, and by the latter to the purchaser. And so where the money is·

borrowed for the purpose of paying the original purchase-money mortgage upon the giving of a new mortgage to the lender to secure the amount, since the lender might have first taken an assignment of the first mortgage, and released it upon receiving a new mortgage in its place, the transaction may be regarded in equity as if that had been done, where the intention appears to have been to substitute the new for the old mortgage giving the new mortgagee the same lien.

We do not understand these principles to be disputed by counsel, but it is contended that they are inapplicable to the facts in the case at bar, for the reason that the purchase-money mortgage had been discharged by the foreclosure sale, and the debt secured thereby extinguished by the payment of the proceeds to the mortgagee. The argument does not hold good where the former mortgage is paid by the use of the borrowed money, as held in Carr v. Caldwell, supra, for it was argued in that case that the payment and release of the original mortgage discharged the debt and lien. In that case a decree of foreclosure had been obtained upon a mortgage given for the purchase price, and the premises had been advertised for sale under the decree. On the day set for the sale the mortgagor borrowed money of another to be applied in payment of the decree and mortgage, and executed to him a mortgage upon the property. The money was so applied. The court said: "It cannot be doubted that if the note and mortgage of Gordon had been renewed, the homestead would have continued bound. Can it make any difference in equity whether the first debt be renewed or another debt—if it be another—for the same sum created, to raise money to pay off the first? A clear title to the homestead could not vest until the payment of the purchase-money. In equity and in effect, the advance of the money by Carr under the circumstances, to pay off the purchase-money due, was equivalent to so much purchase-money. The debt was, to all intents and purposes, the same, though the creditor was changed. The authorities cited by re-

spondent, and especially 1 Dall. 164, 6 Watts, 134, 7 Watts, 362, and Dillon v. Byrne, 5 Cal. 455; 1 N. H. 168; support this view; and if we could find no case to support it, the sense and apparent justice of the rule would go far towards inducing us to adopt it.' '

In the case at bar, it is true, the sale upon the foreclosure had occurred, and the money was borrowed and used to redeem from the sale. It is true also that, as a personal obligation of the mortgagors, the debt had been extinguished. It is proper, therefore, to consider the effect of the sale upon the rights of the parties, and the relation of the purchasers to the mortgage foreclosed, the lien thereof, and the land. It cannot be denied that the purchasers at the sale acquired all the lien of the mortgage, or that such lien was superior to the homestead right. The purchasers had at least a lien equal to that of the mortgage, the foreclosure proceedings and sale being regular; and if the sale was irregular or invalid for any reason, they would be entitled to be subrogated to the rights of the mortgagee, and the mortgage would be regarded as assigned to them. (1 Jones on Mort., 6th Ed., sec. 74; 2 Id. secs. 1654, 1661, 1897, 1802; Cavanaugh v. Sanderson, 152 Mich. 11, 115 N. W. 955.) But they had something more than a mere lien, for the only right of the mortgagors was the statutory right of redemption. Mr. Freeman says that the right of the purchaser at an execution sale during the period of redemption seems more like an inchoate title, though it is also a lien. (3 Freeman on Executions, sec. 323.) The question has been considered in Minnesota with relation to the right of a purchaser under the foreclosure of a junior mortgage to redeem from a sale under a prior mortgage. And it was said: "The title of the mortgagor does not pass by the foreclosure till his right of redemption expires. * * * The foreclosure attaches this condition to his title; that it will pass at the end of a year from the sale unless he, his heirs, executors, administrators or assigns redeem. * * * The lien of the mortgage is not extinguished until it merges in the legal estate, when

that passes by lapse of time. It has passed indeed to the
purchaser,—that is to the amount of the purchase price,—
so that, if he go into possession under the foreclosure, even
though it be invalid, he is regarded as a mortgagee in pos-
session." It had been indicated in a former case that the
purchaser was not a creditor with a lien entitling him as
such a creditor to redeem, but the court, referring to that
case, further said: "We think, however, on reflection, that
the term 'creditor,' as used in the statute, ought not to be
construed as having the limited sense of a personal credi-
tor. There may be a creditor, so far as concerns the land
alone, without the personal relation of debtor and creditor,
in the ordinary sense, existing." And it was held that the
purchaser, within the meaning of the redemption statute,
was a creditor having a lien. (Buchanan v. Reid, 43 Minn.
172, 45 N. W. 11.) In Indiana, after referring to previous
decisions of the court, it was said: "These decisions close
the question as to the nature of the right of the holder of a
sheriff's certificate, and establish the rule that he has a
lien, and not a title. * * * We adjudge that the holder
of a sheriff's certificate acquires a lien, and that he has a
right to redeem as a lien-holder, but not as owner." (Rob-
ertson v. VanCleave, 129 Ind. 217, 26 N. E. 899, 29 N. E.
781, 15 L. R. A. 68.) And in Illinois, where a junior
mortgagee had redeemed from a foreclosure sale under the
senior mortgage, the court said: "By the redemption, the
sale and certificate, as the statute declares, became null and
void, but upon familiar principles of equity, McCarthy
became subrogated to the rights of the purchaser to the
extent of having a first lien on the land redeemed for re-
inbursement of the redemption money." (Ogle v. Koerner,
140 Ill. 170, 29 N. E. 563. See also Herdman v. Cooper,
138 Ill. 583, 28 N. E. 1094.) While the purchaser does not
have the legal title until the redemption period has expired,
and is not until then entitled to a deed or possession, and
during the period allowed for redemption, has only a lien
which may ripen into full legal title, his title when he re-

ceives a deed will relate back to the time of the execution of the mortgage, and take effect by virtue of the original deed or mortgage, so as to cut off all subsequent liens and interests created by the parties. (2 Jones on Mort., secs. 1661, 1664, 1897.)

If it may be rightly said that the mortgage debt was extinguished by the sale and before the estate of the mortgagors could pass to the purchasers by a deed, that would be true only in the sense that it had ceased to be the personal obligation of the mortgagors. It remained for the purpose of supporting the lien of the purchasers, though a personal judgment could not have been recovered upon it, and, after the sale, to the extent of the amount paid by the purchasers upon the sale, it was a conditional obligation attached to the right of redemption, for the property could not be redeemed from the sale except by the payment of that amount. While no duty to redeem rested upon the mortgagors, they were entitled to do so, but only upon the payment of the amount required by law in such case; and the mortgage debt determined the character and dignity of the lien acquired by the purchasers. Where one had purchased land subject to a mortgage, and afterwards took an assignment of the mortgage, and the widow of the former owner who had given the mortgage claimed dower it was said: "The debt, even if discharged so that an action could not be sustained against the original promiser, still subsists in the nature of a charge or lien upon the land, and upholds the mortgage title as against any one who ought not in justice take the land from the mortgagee without paying the money." Speaking of the situation of the owner respecting the title, immediately preceding the remarks just quoted, the court said: "It is true, he holds all the title that Adams had, and all the title that Parrott (the mortgagee) had, and the two titles, therefore, unite in him. Now by this, prima facie, the mortgage debt is extinguished. But that is not considered as done without regarding the equities of the parties." And so it was held that the widow was entitled to dower

only upon contributing her due proportion of the mortgage debt. (Adams v. Hill, 29 N. H. 202.)

Unquestionably, therefore, the purchasers under the foreclosure sale had a lien upon the property including the homestead right,—a lien which, through the failure to redeem within the period allowed therefor, would ripen into an absolute title. It was the lien of the mortgage, as much so as if the mortgage had been assigned to the purchaser; and necessarily was a lien for purchase-money created by the mortgage. For the purpose of discharging that lien the money was borrowed from the defendant Powers, and the mortgage in question was executed and delivered to him; and it is contended that by this transaction a homestead right was acquired in the property, though it had not been paid for except with money borrowed upon the security of this mortgage. It was well said by the Supreme Court of Wisconsin: "Exemption and homestead laws are liberally construed to effect their beneficent purpose, but they will not be construed so as to accomplish positive frauds, if such a result can be avoided." (Lashua v. Myhre, 117 Wis. 18, 93 N. W. 811.) We are not called upon in this case to determine what the effect of the transaction, or the rights of the parties, would have been, if the money had been loaned solely upon the personal obligation of Alex Powers and his wife, without any agreement or understanding for a lien upon the premises as security therefor; and, therefore the question to be decided does not wholly depend upon the technical meaning of the term "purchase-money," or the words of the Constitution, "obligations contracted for the purchase of said premises." For here security was given under circumstances clearly showing an intention to secure the payment of the money loaned by a first lien upon the property.

While the point does not appear to have been contested, a transaction like that in this case, viz.: money loaned secured by a trust deed on the property to redeem from a foreclosure sale, was regarded by the courts in Illinois as

preserving the lien of the mortgage for the purchase-money, and, upon a sale of the property to satisfy the claims of other creditors, the amount of such lien was first paid out of the proceeds; though the property had been conveyed to the wife upon the payment by her of the money so loaned. (Frederick v. Emig, 186 Ill. 319, 57 N. E. 883, 78 Am. St. Rep. 283; Frederick v. Ewrig (Emig) 82 Ill. 363.) The money for which the mortgage was given to secure was in fact borrowed and used to pay the purchase price of the property. J. D. Powers, who loaned the money and to whom the mortgage was executed, had been the assignee and holder of the original mortgage for the purchase price, and had foreclosed it by a sale of the property. He was again requested to assist the parties in preventing the loss of their interest in the property, and, to do so, as he did not have sufficient funds for the purpose, he borrowed $300, a part of the amount required, from the Bank of Commerce, which accounts for the execution of the new mortgage to that bank for the benefit of Powers. Disregarding the mere form of the transaction, it is impossible to understand it in any other light than that Alex Powers and his wife wanted to secure further time to pay for their property, and arranged for the loan for that purpose. They had not paid for it up to that time, and if they paid for it at all, it was with the money loaned to them on July 12, 1906, for which the mortgage of that date was given. Under these circumstances is it the duty of the court to grant the relief demanded by the plaintiff by entering a decree removing as a cloud upon her title the lien claimed by these defendants, by reason of the omission from the mortgage of a clause expressly waiving the homestead right of Alex Powers? We think not, even if it would be improper to regard the mortgage as one given for purchase money. Assuming that the mortgage was one in which an express release of the homestead by both parties was necessary to authorize it to be construed as barring the homestead right, the facts of the case, in our opinion, bring it within the

operation of the principle of equitable assignment by sub-
rogation, which, as observed by Mr. Pomeroy, speaking of
the doctrine in relation to mortgages, "is justly extended,
by analogy, to one who, having no previous interest, and
being under no obligation, pays off the mortgage, or ad-
vances money for its payment, at the instance of a debtor
party and for his benefit; such a person is in no true sense
a volunteer." (3 Pomeroy's Eq. Juris., sec. 1212; Amick
v. Woodworth, 58 O. St. 86, 50 N. E. 437; Motes v. Rob-
ertson, 133 Ala. 630, 32 So. 225; Boevink v. Christiaanse,
69 Neb. 256, 95 N. W. 652; Warford v. Hankins, 150 Ind.
489, 50 N. E. 468; Ogden v. Totten (Ky.), 34 S. W.
1081; Wilson v. Wilson, 6 Idaho, 597, 57 Pac. 708; Heuser
v. Sharman, 89 Ia. 355, 56 N. W. 525, 48 Am. St. Rep. 390;
In re McGuire, (D. C.) 137 Fed. 967.)

The following statement of the rule is found in the
opinion of the court delivered by Judge Thayer in the case
of Cumberland B. & L. Ass'n. v. Sparks, 111 Fed. 647, 49
C. C. A. 510: "Where money is advanced to a debtor in
pursuance of an express agreement that it is to be used to
retire existing loans or incumbrances on his property, and
that the creditor who loans the money is to have a first lien
upon the property to secure its repayment, such creditor may
be subrogated to the rights of the incumbrancer or lienor
whose debt has been paid, not only as against the borrower,
but as against any one else who subsequently acquires an
interest in the property with knowledge of the circumstances
under which the money to pay off the incumbrances or liens
was advanced. They (the authorities) further hold that, if
money is advanced to a debtor to discharge an existing first
mortgage upon his property, and in pursuance of an agree-
ment that the lender is to have a first lien upon the property
for the repayment of the sum loaned, the lender is entitled,
as against a junior incumbrancer, to be treated as the as-
signee of the first mortgage which has been paid off and
discharged with the money loaned, whenever it becomes
necessary to do so to effectuate the agreement with the

lender, and to prevent the junior incumbrance from being raised accidentally to the dignity of a first lien, contrary to the intention of the parties. The species of subrogation mentioned in both of these instances is what is termed 'conventional subrogation,' and does not depend upon the establishment of any privity of contract."

While the rule is more generally stated in a form requiring an express agreement that the lender should have a first lien upon the property, many authorities sustain the proposition that in the absence of an express agreement one may be implied. (Gans v. Thieme, 93 N. Y. 225; Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; Rachal v. Smith, 101 Fed. 159, 42 C. C. A. 297.) And in the notes to the Georgia case cited in 84 Am. St. 233, it is said: "One who lends money to discharge liens on real property and who discharges them at the request of the debtor, expecting that his securities will of record take the place of that which is discharged is not a volunteer. Therefore, he may be subrogated to the liens discharged." In Rachal v. Smith, the court say: "If a person pays a debt at the instance, request, or solicitation of the debtor, he is neither a volunteer, stranger, or intermeddler; nor is the debt regarded as extinguished, if justice requires that it should be kept alive for the benefit of the one advancing the money, who thereby becomes the creditor. * * * We decide that on the facts of the case, in the absence of any agreement on the subject, the Alliance Trust Company (the new mortgagee) is subrogated to the rights of the mortgagees, whose claims it advanced the money to discharge." The theory is that the agreement that the lender is to be secured by a first mortgage on the property, will be treated in equity as an agreement that the lien to be discharged shall become security for the loan; that such is the substance of the transaction, and equity will effectuate the real intention of the parties, where no injury is done to an innocent party. (Home Sav. Bank v. Bierstadt, 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146.)

In Lashua v. Myhre, 117 Wis. 18, 93 N. W. 811, the rule was stated as follows: "Where one loans money to another upon the agreement that it is to be used to pay off an existing mortgage on property and that a new mortgage is to be executed to the lender therefor, the lender is entitled to be subrogated to the rights of the prior mortgagee in case the borrower fails to execute a new mortgage, or in case the new mortgage, when executed, proves to be invalid or defective." And the rule was applied where a chattel mortgage upon exempt property was defective for the reason that the signature of the wife, who was required by law to sign such an instrument, was not witnessed by two witnesses as required by the statute; the mortgage having been given for money borrowed to pay off an existing mortgage on the property. The suit was brought by the husband and wife to remove the cloud upon the title of the apparent lien of the mortgage. The court said: "The owner of the property having borrowed money of the defendant under his agreement that it should be used to pay off a valid mortgage thereon and that defendant should have a new one in place thereof, and the money having been in fact so used, a court of equity would doubtless keep alive the valid mortgage for the defendant's protection to meet the very contingency of the wife's refusal to sign." And it was held that upon proof of such facts the plaintiffs would not be entitled to have the apparent lien of the second mortgage set aside, except upon condition that the amount due upon the valid mortgages, "now equitably owned by the defendant," be first paid.

The findings, it is true, do not expressly state that the new mortgage was executed pursuant to an agreement to secure the loan by a lien on the property; but it is impossible to construe the transacation as shown by the findings otherwise than as the result of a prior agreement to secure the loan by a first mortgage lien, and thereby substitute a new mortgage for the lien of the first mortgage, then held by the purchasers under the foreclosure sale.

The court found that for the purpose of redeeming the property from the sale the money was borrowed and the mortgage executed. The money was loaned and the mortgage executed at the same time. The fact that the mortgage was given shows an understanding that one would be given. The note was signed by both the plaintiff and her husband. The mortgage contained covenants that the property was free from all incumbrances; that the mortgagors were seized in fee simple; that they had a good and lawful right to convey the property; and that they would warrant and defend the same against all lawful claims and demands whatsoever. And the plaintiff, by a clause inserted therein, expressly waived and released her homestead right. Does not this show an intention to give a first and valid lien upon the premises? It seems to us that it does. In Louisiana it is held that such a waiver by the wife alone is sufficient to show the intention of both parties to waive the homestead, and a similar mortgage was held to constitute a waiver by both parties, on the ground that the waiver by the wife alone would be meaningless, since she had no homestead to waive independently of her husband. (Coleman v. Wax, 120 La. 877, 45 So. 926.) Whether that would be a correct ruling or not under our statutes we are satisfied that the mortgage itself discloses that the parties intended to execute a mortgage properly waiving the homestead; and, in connection with the other facts, justifies us in concluding that it was executed pursuant to an agreement to substitute for the lien to be discharged, another security of equal effect. Another persuasive fact is that the note signed by the plaintiff and her husband, which was given at the time of the mortgage for the money loaned, contained a clause stating that the makers waived all benefit of stay and exemption laws; and upon the margin was written, "Secured by Real Estate Mtg." It is to be remembered also that the property was worth but a small amount over $1,500, the amount of a homestead exemption; that the lender had held and foreclosed the prior mortgage; and it would be most un-

reasonable to suppose that he would advance a larger sum, made necessary by the expense of the foreclosure, upon the understanding that he was to have a lien only upon the small excess above the value of the homestead exemption, when it appears that he was to have a mortgage upon the property, and one was executed without the express reservation of any interest of the mortgagors or others.

Holding that the defendants would be entitled to be subrogated to the prior lien, if the mortgage under which they claim was invalid or defective, and that such prior lien was a lien for purchase money, it is clear that not having paid or offered to pay at least the amount that would be necessary to satisfy the prior lien, the plaintiff was not entitled to the relief she asked for.

But since the lien to which the defendants would be subrogated, if necessary, was a purchase-money lien, we see no objection to considering the mortgage in question as one for purchase-money; and in that view of it, the manner of its execution and the provisions contained therein would be sufficient to bar the homestead right. We think, indeed, that it might properly be held to have been a purchase-money mortgage; for there appears to us to be no substantial distinction in that respect between a mortgage given for money loaned to pay off a prior purchase-money mortgage, and one given to secure a loan made for the purpose of redeeming from a foreclosure sale under such mortgage. The judgment will be affirmed.

BEARD, C. J., and SCOTT, J., concur.