**In re Jerome Albert PSICK and Patricia Deanna Psick, individually and d/b/a Nature's Nutrition Center, Debtors.**

**Bankruptcy No. 5–85–170.**

United States Bankruptcy Court,
D. Minnesota,
Fifth Division.

Sept. 19, 1985.

Chester C. Graham, Brainerd, Minn., for debtors.

Thomas A. Fitzpatrick, Brainerd, Minn., for First Bank Brainerd.

Max J. Ruttger, III, Brainerd, Minn., for Brainerd B.N. Credit Union.

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter came on before the undersigned United States Bankruptcy Judge on August 21, 1985, upon Debtors' motion to avoid security interests pursuant to 11 U.S.C. § 522(f). Debtors appeared personally and by their attorney, Chester C. Graham. First Bank Brainerd (hereinafter "First Bank") appeared by its attorney, Thomas A. Fitzpatrick. Brainerd B.N. Credit Union (hereinafter "the Credit Union") appeared by its attorney, Max J. Ruttger, III. Upon the evidence adduced, post-trial memoranda, and all of the other files and records in this case, the Court makes the following Order.

FINDINGS OF FACT

1. That Debtors filed their Voluntary Petition under Chapter 7 of the Bankruptcy Code in this Court on July 1, 1985.

2. That from 1977 until early June, 1985, Debtors operated a retail health foods store under the business name of "Nature's Nutrition Center" in Brainerd, Minnesota.

3. That, on December 4, 1980, Debtors obtained a loan in the amount of $17,500.00 from First Bank, for the purchase of equipment and inventory for their store and for remodeling work which they required to increase floor area. On that date, Debtors executed a Security Agreement granting First Bank a security interest in "Inventory, Equipment, Furniture, Fixtures and Accounts Receivable". From the date of this note until the filing of their Petition in this Court, Debtors paid little if any of the principal balance on the note and did not pay all interest as it accrued. From time to time, at the request of First Bank employees, Debtors "rolled over" the obligation under the note when it became due by executing a new note in the amount of the current outstanding balance. From time to time, Debtors executed additional security agreements in favor of First Bank to secure the renewed indebtedness, the most recent of which was dated October 26, 1984. This last security agreement granted First Bank a security interest in Debtors' inventory, equipment, furniture, fixtures, and accounts and other rights to payment.

4. That in their Motion Debtors seek to avoid First Bank's security interest in an electronic scale, two freezers, a cooler, and shelving materials. Debtors purchased the shelving for their store in 1977 when they opened the store; they purchased at least one of the freezers with the initial proceeds from the First Bank loan.

5. That, on November 30, 1982, Debtors obtained a loan in the amount of $3,629.24

from the Credit Union, for the purchase of an electronic scale and a 16-bin "floor unit" for use in their store. Debtors executed a Security Agreement granting the Credit Union a security interest in this equipment. The security interest specifically provides "the Collateral will be acquired by the Debtor with the proceeds of the loan from Secured Party". From time to time, Debtors renewed this obligation to the Credit Union, most recently in a note dated May 27, 1984. In addition, at some point (whether before or after the loan secured by the store equipment is not clear from the record) Debtors incurred an additional debt to the Credit Union, which was last renewed in a note dated February 26, 1985. Debtors granted the Credit Union a security interest in certain personal property to collateralize this debt. At present, the Credit Union holds security interests under the two notes in the following personal property:

Electronic scale

16-bin floor unit

1980 Ford Cougar automobile

Troybuilt tiller

1980 Honda dirt bike

Model 60 John Deere tractor with loader

All of this property is presently in Debtors' possession.

6. That Debtors used none of the proceeds of any loan from the Credit Union to purchase the 1980 Ford Cougar automobile, the Troybuilt tiller, the dirt bike, or the tractor-loader.

7. That Debtors currently hold the 1980 Ford Cougar automobile, Troybuilt tiller, dirt bike, and tractor-loader for their personal, family and household use.

8. That Debtors closed Nature's Nutrition Center in early June, 1985, and have not done business as a retail store since that date. Debtors have no immediate or long-range plans of any substance to engage again in the retail health food or grocery business. At present, Debtor Patricia Psick hopes to enter an educational course for accounting or business marketing; Debtors' Statement of Financial Affairs alleges that Debtor Jerome Psick is presently employed by United Parcel Service.

9. That the value of the security involved, as set forth on Debtors' bankruptcy schedules and not disputed by any party, is as follows:

| | |
|---|---|
| Electronic scale | $1,000.00 |
| 16-bin floor unit | not scheduled |
| Freezers (one at $900.00, one at $100.00) | 1,000.00 |
| Cooler | 700.00 |
| Shelving | "unknown" |
| 1980 Ford Cougar automobile | 4,000.00 |
| Troybuilt tiller | 300.00 |
| 1980 Honda dirt bike | 500.00 |
| Model 60 John Deere tractor with loader | 1,000.00 |

10. That Debtors' debts to First Bank and the Credit Union, as set forth on their bankruptcy schedules and not disputed by any party, is as follows:

| | |
|---|---|
| First Bank | $15,869.35 |
| | 3,608.45 |
| TOTAL: | $19,477.80 |
| Credit Union | $3,692.17 |
| | 7,468.99 |
| TOTAL: | $11,161.16 |

## CONCLUSIONS OF LAW

Debtors bring their motion on 11 U.S.C. § 522(f), which provides in pertinent part as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.    .    .    .    .

(2) a nonpossessory, nonpurchase money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household sue of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;

.     .     .     .     .

In order to avoid the liens in question under § 522(f)(2), Debtors must prove the existence of four elements:

1. That the debtor has an interest in the property in question;

2. That the creditor's lien impairs an exemption of the property to which the debtor would have been entitled under 11 U.S.C. § 522(b), in the absence of the lien.

3. That the lien is a nonpossessory, non-purchase money security interest in the property; and

4. That the lien attaches to goods in either of the specific categories set forth in §§ 522(f)(2)(A) and 522(f)(2)(B).

*In re LaFond,* 45 B.R. 195, 198 (Bankr.D. Minn.1984), *aff'd,* 61 B.R. 303 (D.Minn. 1985), *aff'd,* 791 F.2d 623 (8th Cir.1986).

Debtors have met their burden of proof on the first element; they have at least a bare title and possessory interest in all of the goods in question.

■ On the second element, the record is less clear. Debtors do not specifically enumerate and claim the tiller, dirt bike, tractor-loader, floor unit, and shelving as exempt on their Schedule B–4. They claim the automobile as exempt in a scheduled exempt value of $1,200.00, the maximum allowable under § 522(d)(2). Therefore, under the state of the case file at present, Debtors have not even proven the threshold element that they would have been entitled to an exemption of their interest in these items but for First Bank's and the Credit Union's liens, which is accomplished for the sake of clarity by actually claiming the hypothetical exemptions on Schedule B–4 under standard practice in this Court. Debtors are, of course, entitled to amend their Schedules as of right at any time until their case is closed. BANKR.R.1009. Debtors' motion impliedly asserts the exemption. Thus, the Court will overlook a readily-correctable paper defect to reach the merits on this element. It appears that all of the goods in question may be exempted under 11 U.S.C. § 522(d)(2), (d)(3), or (d)(5). It further appears that the aggregate values of these items do not exceed the limitations under § 522(d)(2) and (d)(3), as augmented by § 522(d)(5). *In re La-Fond,* 45 B.R. at 200–201 n. 2. *See also, In re Walkington,* 42 B.R. 67, 72–76 (Bankr. W.D.Mich.1984). Therefore, Debtors have met their burden under the second element, albeit via a less than ideal record.

■ On the third element, the record is again deficient. As noted by the Credit Union's counsel, Debtors' trial testimony and exhibits largely failed to trace the progress of the original debts through the string of renewal notes asserted in conclusory argument by their counsel. Ideally, Debtors' counsel should have done so to make a proper record. However, the Court may refer to Debtors' Petition and Schedules in this case and may take notice of assertions by Debtors therein as prior admissions. *In re Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206, 211 (5th Cir.1983). The Court has done so in the case of the Credit Union's debt and has inferred that Debtors' original purchase money obligations to the Credit Union were renewed at least once. In addition, trial testimony showed that First Bank's debt was renewed at least once and Debtors executed several new security agreements with different terms. Such renewals and executions of new security agreements constitute novations which convert the original purchase money security interests to non-purchase-money security interests. *In re Slechta,* BKY 3–84–1456, slip op. at 3–4 (Bankr.D.Minn. June 26, 1985); *In re Walkington* at 70–71; *In re Zweibahmer,* 25 B.R. 453, 457 at n. 11 (Bankr.N.D.Iowa 1982); *In re Hitts,* 21 B.R. 158, 159–60 (Bankr.W.D.Mich.1982). Debtors have therefore met their burden on the third element, in spite of a less-than-meticulous record.

However, Debtors' motion fails on the fourth element, for reasons related to the

statutory scope of the lien avoidance remedy. The issues of entitlement to exemptions and entitlement to the lien avoidance remedy are separate and distinct, and are controlled by distinct statutes. *In re Thompson*, 750 F.2d 628, 630 (8th Cir. 1984). Two statutory classes of property under § 522(f)(2)(A) are involved here. Analysis of Debtors' motion must distinguish the two classes since the statute and case law establish different tests for the applicability of lien avoidance to each class.

### § 522(f)(2)(A): Househood furnishings, household goods, appliances, et al.

■ Under § 522(f)(2)(A), Debtors seek to avoid the Credit Union's security interest in an automobile, a tiller, a dirt bike, and a tractor-loader. Debtors could claim their hypothetical post-lien-avoidance equity in these goods as exempt under § 522(d)(2), (d)(3), or (d)(5), subject to the applicable value limitations under those sections. However, they must still prove that the property encumbered by the liens which they seek to avoid falls into the categories under § 522(f)(2)(A). That statute creates and delineates the debtor's lien avoidance remedy, applicable only to a protected class of specific types of property. In general, the class includes property which Congress deemed to be essential to a debtor's fresh start, which is, by its nature, of more significant value to a penurious debtor than to a repossessing secured creditor. H.R.REP. NO. 595, 95th Cong.2d Sess. 127–27 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *In re Thompson* at 630. This class is narrower in its scope than the class of property protected under the exemption statutes from the claims of unsecured creditors in the liquidation process. Simply stated, not all property which may be claimed as exempt under § 522(d) may be freed from encumbering liens under § 522(f).

■ The dirt bike, tractor-loader, and automobile encumbered by the Credit Union's lien cannot be classified as "household furnishings", "household goods", or "appliances". The automobile is a "motor vehicle" within the meaning of § 522(d)(2), and nothing else. Lien avoidance will not lie under § 522(f)(2)(A) against motor vehicle liens. *In re Yokley*, 42 B.R. 574 (Bankr.N.D.Ala.1984); *In re Smith*, 29 B.R. 345 (Bankr.M.D.Pa.1983). Some Courts have gone so far as to consider a lawn tractor as a "household good". *See, e.g., In re Jones*, 5 B.R. 655 (Bankr.M.D.N.C.1980). However, this Court declines to find that the tiller involved here is a "household good", compelled by the unequivocal mandate of the Eighth Circuit "that only those personal goods *necessary to the debtor's new beginning and of little resale value* fit the federal bankruptcy philosophy embodied in section 522(f)(2)". *In re Thompson* at 631 (emphasis added). Though there is no dispute that Debtors use these items in their daily household activities, the goods simply do not fall within the limiting construction placed on § 522(f)(2)(A) by the Eighth Circuit.

### § 522(f)(2)(B): Implements, ... or tools, of the trade of the debtor.

■ Under § 522(f)(2)(B), Debtors seek to avoid First Bank's lien in the electronic scale, two freezers, cooler, and shelving materials used by them in the operation of their retail store, and the Credit Union's security interest in the same electronic scale. This Court has concluded previously that Congress created the remedy of avoidance of liens against tools of the trade for the purpose of protecting and continuing the debtor's trade. *In re LaFond* at 199. Therefore, even where a security interest in question is nonpossessory and non-purchase money, the Court must still find that a debtor is engaged in a trade which commonly uses the items in question. *In re Middleton*, 41 B.R. 953, 955 (D.Minn.1984). In this case, the Court concludes that Debtors are not engaged in a trade in which they can make use of the items in question. Debtors closed their retail store in June, 1985. They have not reopened it; they have no present intention to reopen it; and they have no immediate or long-range plans of any substance to engage in any trade which could conceivably make use of

**314**

these items. This Court has adopted a liberal standard for the determination of whether a debtor is engaged in a particular trade, even where the debtor is not actively pursuing that trade at the time of his motion. Where a debtor expresses a present intention to resume a trade utilizing the tools in question, the opposing creditor must show a subjective, intentional, permanent abandonment of the trade by the debtor in order to prevail. *In re Pommerer*, 10 B.R. 935, 942 (Bankr.D.Minn.1981). Debtors' own testimony virtually compels the conclusion that they have permanently abandoned the retail health food and grocery trade. It therefore logically follows that the items formerly used by them in their store which are still encumbered by First Bank's and the Credit Union's liens are not implements or tools of their trade. As a result, Debtors may not avoid those liens.

■ Neither, for the sake of argument, can any of the other goods subject to the Credit Union's security interests be classified as implements or tools of the trade of Debtors. This Court has in the past held that a motor vehicle can be considered to be a tool of the trade of a debtor upon a sufficient showing of extensive use in the debtor's trade, excluding virtually all personal use. *In re LaFond*, 45 B.R. 195, 199 (Bankr.D.Minn.1984), and cases cited therein. *See also In re Schneider*, 37 B.R. 747 (Bankr.N.D.Ga.1984). Likewise, a tractor-loader could be considered to be the tool of a trade of a farmer (or, conceivably, even a person engaged in snow-plowing for hire) upon a proper showing. *See, e.g., In re Liming*, 22 Bankr. 740 (Bankr.W.D.Okla. 1982). However, Debtors produced no evidence that they used any of these goods in their trade; Debtor Patricia Psick affirmatively testified in response to her attorney's direct examination that she did not, and never had, used these goods in the conduct of Debtor's retail store or in any other trade of either Debtor.

### CONCLUSION

Because Debtors have failed to prove up all of the elements necessary to entitle

them to avoidance of First Bank's and the Credit Union's liens under § 522(f), their motion must be denied.

WHEREFORE, IT IS HEREBY ORDERED that Debtors' motion for lien avoidance is denied in all respects.