In re Melvin Beatty GEIST, and Gladys Henrietta Geist, Debtors/Appellants,

v.

CONVERSE COUNTY BANK, Creditor/Appellee.

No. C86–382J.

United States District Court, D. Wyoming.

Nov. 3, 1987.

Stephen Winship, Donald R. Winship & Associates, Cherie Norman, Casper, Wyo., for debtors-appellants.

John C. Patton, Carmichael, McNiff & Patton, Cheyenne, Wyo., for creditor-appellee.

## MEMORANDUM OPINION

JOHNSON, District Judge.

THE ABOVE CAPTIONED MATTER is before this Court on appeal from a decision by the Bankruptcy Court in a September 30, 1986, Order granting Converse County Bank's motion to modify the automatic stay so that it could repossess and foreclose its security interest in a 1984 motor home.

In the fall of 1983, debtors-appellants financed their purchase of a 1984 motor home with a $15,000 loan from creditor-appellee, Converse County Bank. On October 11, 1983, the bank filed a security agreement and financing statement, which statement reflected the bank's properly perfected purchase money security interest[1] in the motor home. After rewriting and extending the maturity date of debtors' $15,000 promissory note, the bank, on October 6, 1985, advanced the debtors a $5,000 "nonpurchase money loan." The bank secured this loan by taking an additional security interest in the mobile home.

At that time, the debtors had paid $5,000 of the original 1983 purchase money loan. The bank then filed a security agreement and financing statement that listed the 1984 motor home as collateral for the October 6, 1985, nonpurchase money loan. The bank also consolidated both loans into a single note for $15,009.50.

On January 30, 1986, the debtors filed a joint petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 302. On the date of debtors' petition, the bank still held the security interest in the motor home in the amount of $15,009.50. In their petition, each debtor claimed a $10,000 homestead exemption in the motor home.[2] The Wyoming homestead exemption statute provides that "every resident of the state is entitled to a homestead not exceeding ten thousand dollars ($10,000) in value exempt from execution and attachment arising from any debt, contract or civil obligation entered into or incurred."[3] Wyoming statute section 1–20–101 (1977) defines homestead to include a motor home.[4]

The bank did not anticipate that debtors would occupy the motor home as a homestead.[5] Consequently, the bank failed to have the debtors sign a release and waiver of their homestead rights in the motor home when the bank took a security interest in it. Release of homestead is required by Wyoming statute section 34–2–121 (1977), which provides, in part:

Every owner or occupant of a homestead as established herein may voluntarily sell, mortgage, or otherwise dispose of or encumber the same; provided the instrument of writing conveying, mortgaging, disposing of or encumbering such homestead shall contain in substance the following words: "Hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state," and shall be freely and voluntarily signed and acknowledged by the owner and the spouse of the owner of such homestead. . . .

Because there was no release and waiver in the security agreement, the debtors sought to establish their combined homestead

---

1. Wyo.Stat. § 34–21–907(a)(ii) (1977) defines a purchase money security interest as one which a debtor grants to a lender to secure repayment of a loan made to enable the debtor to acquire rights in the collateral.

2. In accordance with 11 U.S.C. § 522(b)(2)(A) of the Bankruptcy Reform Act of 1978, Wyoming "opted-out" of the federal exemption list provided for in 11 U.S.C. § 522(d).

3. Wyo.Stat. § 1–20–101 (Cum.Supp.1987).

4. Wyo.Stat. § 1–20–104 (1977) provides that:
   The homestead may consist of a house and a lot or lots in any town or city, or a farm consisting of any number of acres, or a house trailer or other *movable home,* whether or not equipped with wheels or resting upon imovable support, the value of which does not exceed six thousand dollars ($6,000). (Emphasis added.)
   In amending Wyo.Stat. § 1–20–101 in 1987, the Wyoming Legislature apparently overlooked the need to amend Wyo.Stat. § 1–20–104 (1977) so that it would be in conformity with § Wyo.Stat. § 1–20–101 (Cum.Supp.1987)

5. Wyo.Stat. § 1–20–102(a) (Cum.Supp.1987) states that "[t]he homestead is only exempt as provided in W.S. § 1–20–101 while occupied as such by the owner or the person entitled thereto, or his or her family."

rights in the motor home as superior to the bank's security interest. The Bankruptcy Court found that each debtor had a $10,000 homestead exemption in the motor home, but concluded that it applied only to the debtors' interest unencumbered by the the Bank's lien. The Court also found the Bank possessed a perfected security interest in debtors' homestead for $15,009.50. Thus debtors could claim as homestead any balance remaining after Bank foreclosed its security interest.

## DISCUSSION

In their appeal to this Court, debtors raised the following issue:

Whether the bankruptcy court erred in finding that bank's perfected security interest was superior to debtors' homestead exemption.

The Bank argues that debtors may claim their homestead exemption only if the lien is avoidable in bankruptcy. It also argues Wyoming's statutory requirement of homestead waiver is inapplicable to transfers of personal property. The Court rejects both these arguments for reasons explained below. This Court instead holds that the Bank's security interest, to the extent it is a purchase money security interest, is superior to debtors' homestead exemption. Conversely, to the extent that Bank's security interest is nonpurchase money, the Court holds it is subordinate to debtors' homestead exemption. The Bankruptcy Court is therefore affirmed in part and reversed in part.

■ Both Article 19, Section 9 of the Wyoming Constitution, and Wyoming statute section 1–20–108 (1977) provide that a purchase money security interest shall have priority over a debtor's homestead exemption.[6] Though the Wyoming Supreme Court has only had occasion to apply these provisions to purchase money real estate mortgages, *Powers v. Pence,* 20 Wyo. 327, 123 P. 925 (1925), this Court believes it would find them equally applicable to purchase money security interests in personal property. In fact, debtors concede this point in their brief when they state that "[a]rticle 19, § 9 and W.S. § 1–20–108 (1977) prohibit the exemption of homestead property from attachment or execution for purchase money."[7] Thus, before this Court can decide the priority of debtors' homestead exemption, it first must determine whether the bank has a purchase money security interest in the motor home.

■ Because the Bankruptcy Code does not define purchase money security interest, the Court must look to state law. *Pristas v. Landaus Plymouth, Inc.,* 742 F.2d 797, 800 (3d Cir.1984). *Lewis v. Manufacturers National Bank of Detroit,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). Wyoming statute section 34–21–907 (1977) defines it as follows:

A security interest is a "purchase money security interest" to the extent that it is:

(i) Taken or retained by the seller of the collateral to secure all or part of its price; or

(ii) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Debtors agree the bank's original security interest of October 11, 1983, was a purchase money security interest. They argue, however, that the bank's security interest lost its purchase money status when the bank refinanced their loan and attempted to use the motor home to secure the subsequent nonpurchase money loan. This argument restates the "transformation rule," which holds that a purchase money

---

**6.** Art. 19, § 9 of the Wyoming Constitution states:

A homestead as provided by law shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes or *for the payment of obligations contracted for the purpose of said*

*premises,* or for the erection of improvements thereon. (Emphasis added.)

Wyo.Stat. § 1–20–108(a) (1977) provides that "[n]o property claimed as exempt under W.S. 1–20–101 through 1–20–106 is exempt from attachment or sale upon execution for the purchase money of the property."

**7.** Brief of appellants at 13, *In re Geist* (No. C86–382J).

security interest transforms itself into an ordinary one whenever a secured creditor either refinances the purchase money loan or uses collateral to secure debt beyond the collateral's price. *In re Faughn,* 69 B.R. 18 (Bankr.E.D.Mo.1986); *South Trust Bank of Alabama v. Borg–Warner Acceptance Corporation,* 760 F.2d 1240 (11th Cir.1985); *reh'g denied,* 774 F.2d 1179 (11th Cir.1985); *In re Jones,* 5 B.R. 655, (Bankr.N.D.N.C.1980); *In re Norrel,* 426 F.Supp. 435 (N.D.Ga.1977); *In re Manuel,* 507 F.2d 990 (5th Cir.1975); *In re Browse,* 6 U.C.C.Rep.Serv. (Callaghan) 471 (W.D. Mich.1969); *In re Simpson,* 4 U.C.C.Rep. Serv. (Callaghan) 243 (W.D.Mich.1966).

Courts accepting the transformation rule reason that refinancing transforms a purchase money security interest into an ordinary one because the refinancing does not enable the debtor to acquire rights in the collateral. This reasoning, however, not only exalts form over substance, but moreover ignores the preamble to U.C.C. § 9–107 [Wyo.Stat. § 34–21–907 (1977)] which states that a security interest is a purchase money security interest *"to the extent"* that it is taken by one making a loan that enables a debtor to acquire rights in the collateral.

Courts rejecting the transformation doctrine reason that a security interest can have a "dual status" and thus a refinancing or an advance of additional funds "does not destroy the purchase money aspect" of the security interest. *Pristas,* 742 F.2d at 800. *See, e.g., In re Conn,* 16 B.R. 454 (Bankr.W.D.Ky.1982); *In re Gibson,* 16 B.R. 257 (Bankr.D.Kan.1981); *In re James,* 7 B.R. 73 (Bankr.D.Me.1980). Under the "dual status" rule, a creditor's refinancing by renewal does not destroy its previously obtained purchase money security interest. Although the refinancing of a purchase money loan does not enable a debtor to acquire rights in the collateral, the purchase money security interest after refinancing is nevertheless preserved to the extent that the balance remaining on the original loan is transferred to the renewal note. *See* McLaughlin, *"Add On" Clauses in Equipment Purchase Money Security*

*Financing: Too Much of a Good Thing"* 49 Fordham L.Rev. 661 (1981).

This Court accepts the "dual status" rule because it gives effect to the preamble of U.C.C. § 9–107. The "transformation rule" on the other hand is unacceptable because it ignores the critical language of § 9–107—"to the extent that." These words only have meaning by allowing the secured debt to have a dual status. To the extent that a security interest secures repayment of a loan made to enable a debtor to acquire rights in collateral, the security interest will retain its purchase money status. As the Third Circuit stated in *Pristas,*

> [A]cceptance of the "dual status" rule, with its *pro tanto* preservation of purchase-money interests, is more in harmony with the [uniform commercial] code. Tolerance of add-on debt and collateral provisions, properly applied, carries out the approbation for purchase—money security arrangements and simplifies repeat transactions....

*Id.* at 801. Acceptance of debtors' argument would inhibit creditors from refinancing outstanding purchase money loans and instead would compel them to foreclose.

This Court believes that this approach is in harmony with the common law of Wyoming. In *Wightman v. National Bank of Riverton,* 610 P.2d 1001 (Wyo.1980), the Wyoming Supreme Court ruled that in the refinancing of personal property and real estate mortgages a lien is not lost in either instance even "if new notes, mortgages, or security instruments are drawn unless that result was intended by the parties." *Id.* at 1005. Further, in *Powers v. Pence,* 123 P. at 932–33, the Wyoming Supreme Court held that refinancing a purchase money mortgage did not destroy its purchase money status even though the debtor used the refinancing to redeem property from foreclosure. The court observed as follows:

> We think, indeed, that it [the new mortgage] might properly be held to have been a purchase-money mortgage; but there appears to us to be no substantial distinction in that respect between a mortgage given or money loaned to pay off a prior purchase-money mortgage

and one given to secure a loan made for the purpose of redeeming from a foreclosure sale under such mortgage.

Thus if the court recognized money loaned to pay off an antecedent debt as purchase money, it seems undeniable it likewise would recognize as purchase money a refinancing whereby one note merely is cancelled and replaced by another. Debtors argue that this Court should not apply the principle expressed in *Powers* because the court's "decision was derived from its equitable powers and respect for substance over form." This Court disagrees and notes that U.C.C. Section 1–103 [Wyoming Statute section 34–21–103 (1977)] specifically permits this Court to use principles of equity to supplement the provisions of the Uniform Commercial Code. In addition, the result reached by this Court is compelled more by the language of U.C.C. Section 9–107 than by principles of equity. In adopting the dual status rule, this Court is not unsympathetic to the public policy underlying the transformation doctrine. The doctrine is directed at a creditor who, by operation of an all-encompassing security agreement, attempts to retain a purchase money security interest in a debtor's household goods until the last item encumbered is paid off. By holding that a purchase money security interest transforms itself into nonpurchase money whenever a secured creditor transgresses U.C.C. section 9–107, the rule becomes critically important in bankruptcy because it allows the debtor to avoid the entire security interest pursuant to 11 U.S.C. Section 522(f):

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is— ... (2) a nonpossessory, *nonpurchase-money security interest* in any—(A) household furnishings, household goods, wearing apparel, appliances, books, ... that are held primarily for personal, family or household use of the debtor or a dependent of the debtor; (emphasis added).

The dual status rule, however, is equally sensitive to these policy concerns in that it places the burden on the creditor to demonstrate the extent to which a security interest retains purchase money status. A creditor's failure to meet this burden will result in the Court's treating the entire security interest as nonpurchase money.[8] *In re Coomer*, 8 B.R. 351, 355 (Bankr.E.D.Tenn. 1980).

In its brief, the bank argues that debtors have no right to claim their homestead exemption because its security interest, being properly perfected, is not avoidable under any of the lien avoidance provisions of the Bankruptcy Code. The bank refers this Court to 11 U.S.C. Sections 522(f), 522(e), 544, 545, 548 and 549. This argument may be true where a debtor executes a security agreement containing a homestead waiver as required by Wyoming Statute section 34–2–121 (1977). Where, however, the creditor takes a security interest in the debtor's homestead property but fails to obtain the requisite waiver, the debtor has no reason to avoid the security interest before claiming the homestead exemption because it has priority over the consensually created encumbrance. *See, e.g., Delfelder v. Teton Land & Investment Co.*, 46 Wyo. 142, 24 P.2d 702 (1933); *Jones v. Losekamp*, 19 Wyo. 83, 114 P.2d 673 (1911). These cases stand for the broad proposition that consensually encumbered homestead without a release is valid only to the excess of the homestead exemption's value. Thus to the extent that the bank's perfected security interest is nonpurchase money, the debtors need not avoid the encumbrance before claiming their exemption because it is, by the absence of a valid waiver, superior to the bank's ordinary security interest.

The bank next admonishes this Court not to extend Wyoming's statutory

---

**8.** In *In re Coomer*, the court stated that "[w]ithout some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money." *Id.*

homestead waiver requirement to personal property. It argues that section 34–2–121 requires a homestead waiver only for real property. The Court disagrees. Nowhere does the statute limit its requirements to real property. Instead, the statute must be read to encompass all property qualifying as homestead. The language refers one to the "homestead exemption laws of this state." These laws are found in Wyoming Statute sections 1–20–101 through 1–20–108 (1977). Section 1–20–108 specifically states that a movable home may qualify as homestead.

This Court sees no reason to limit the homestead waiver requirement to real property. The Court must treat statutory requirements in terms of their objectives and purposes. *Hurst v. State*, 698 P.2d 1130, 1133 (Wyo.1985). In reading the statutory homestead waiver requirements to include all homestead property, the Court considers the problem that this statute was enacted to solve, the historical setting surrounding its enactment, as well as the public policy of Wyoming. *Basin Electric Power Cooperative v. State Board of Control*, 578 P.2d 557, 563 (Wyo.1978). It is axiomatic in this state that homestead statutes are liberally construed. *Pellish Brothers v. Cooper*, 47 Wyo. 480, 38 P.2d 607 (1934). The public policy underlying Wyoming's homestead laws "is that the preservation of the home is of greater social importance than payment of the debt of creditors." *Osborn v. Warner*, 694 P.2d 730, 732 (Wyo.1985). In addition, this Court notes that its interpretation of Section 34–2–121 to include personal property benefits creditors as well as debtors. Absent this statute, there would be little to restrain a court from holding that any waiver of homestead rights in personal property released contemporaneously with a security agreement is void *ab initio*.

In accordance with the principles discussed above, the bank is entitled to repossess and foreclose the purchase portion of its security interest in the motor home. The record indicates that the debtors had paid off approximately $5,000 of the original loan when the bank advanced

them the $5,000 nonpurchase money loan. The bank's security interest in the motor home is therefore purchase money only to the extent of $10,000. In foreclosing the purchase money portion of its security interest, the bank is entitled to the first $10,000. The balance remaining after foreclosure, up to $20,000, shall be accounted for to the bankruptcy trustee and paid over to the debtors as their homestead exemption. Any remaining balance shall be applied toward satisfaction of ordinary security interests remaining in the motor home in accordance with their priority.