**In re William F. HEMINGSON and Connie J. Hemingson, Debtors.**

**Bankruptcy No. 4–87–3301.**

United States Bankruptcy Court, D. Minnesota.

March 18, 1988.

Timothy D. Clements, Cold Springs, Minn., for debtors.

Roylene A. Champeaux, Asst. U.S. Atty., Minneapolis, Minn., for Farmers Home Admin.

## MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

This matter came on for hearing before the undersigned on February 18, 1988, on the Debtors' motion, pursuant to 11 U.S.C. § 522(f), to avoid the lien of Farmers Home Administration ("FmHA") on certain of the Debtors' farm machinery, equipment, and a vehicle to the extent the lien would otherwise impair their allowed exemptions. Timothy D. Clements appeared on behalf of the Debtors; Roylene A. Champeaux appeared on behalf of FmHA. Based upon all the records and files herein and upon arguments of counsel, the court makes the following Memorandum Order.

## FACTS

In this chapter 7 bankruptcy case, Debtors, William F. Hemingson and Connie J. Hemingson ("Debtors"), filed a schedule B–4 in which they claimed 19 pieces of machinery, equipment and certain vehicles valued at $9,300 as exempt. Before the court now is Debtors' motion, pursuant to 11 U.S.C. § 522(f), to avoid liens on this

property. Included within the items claimed as exempt are the following pieces of equipment and machinery and a vehicle on which the FmHA claims a purchase money security interest: (1) N.H. # 512 manure spreader ($400), (2) Allis Chalmers baler ($700), (3) 1965 Owatonna Swather SP ($500), (4) milking equipment (but not a bulk tank) ($500); and (5) a 1965 AC tractor with duals ($2,000).

The facts are undisputed. FmHA's first advance to the Debtors was made on June 2, 1981, at which time debtors obtained a $70,000 operating loan from FmHA. Certain of the proceeds from this initial loan were used to purchase the manure spreader, baler, swather, and milking equipment which are in issue here and the balance was used to refinance bank debt and to pay initial operating expenses of the farm. On April 7, 1982, FmHA made an additional $13,000 advance to the Debtors. Debtors used the loan proceeds from this second advance to purchase dairy cows and for annual operating expenses. At the time of the second advance, the first loan was consolidated with the original operating loan, leaving a balance owing of $83,689.01. On June 22, 1983, FmHA made a third advance, this one in the sum of $5,000, some portion of which was used to purchase the 1965 AC tractor in issue here. Again, this advance was consolidated with the previous operating loans to provide for an outstanding principal balance of $94,797.04. Finally, on February 5, 1985, the operating loan of $94,794.04 was rescheduled with a 25% debt set aside. The debt set aside provided that up to 25% of Debtors' FmHA debt could be placed in a noninterest accrual status for five years. The new principal balance on the operating loan was $101,125.96, the loan balance increase being due to accrued interest.[1]

In connection with this series of advances on the operating loan, Debtors provided FmHA with an original Security Agreement dated June 2, 1981 and revised Security Agreements dated April 2, 1982;

June 8, 1983; July 19, 1984; and July 8, 1986. The Security Agreements contain essentially the same language and reflect that the operating loan was at all times secured by a first lien on crops, livestock, livestock products, farm and other equipment and inventory. The only changes made from time to time in the collateral securing the operating loan reflected additions or deletions of specific items of machinery as they were purchased or sold. An original financing statement was filed by FmHA on June 2, 1981 and was amended and continued May 30, 1986. The promissory notes, if any, evidencing the several advances by the FmHA were not offered in evidence by either party. At all times the amount owed on the operating loan vastly exceeded the claimed value of the manure spreader, baler, swather, milking equipment and tractor.

## DISCUSSION

Debtors argue that FmHA's lien on the five pieces of farm machinery and equipment in dispute is a nonpossessory, nonpurchase money security interest. While Debtors concede that FmHA had a purchase money security interest in the manure spreader, baler, swather, and milking equipment as a result of the June 1981 loan transaction and a purchase money security interest in the tractor arising out of the June 1983 advance, they assert that the FmHA lost its purchase money status when it refinanced the original operating loan and consolidated subsequent loans in 1982 and 1983 and, when in 1985, the FmHA rescheduled the debt with a set aside. Therefore, the Debtors claim the lien is avoidable because it impairs an exemption debtors are entitled to under 11 U.S.C. § 522(f).

Section 522(f) provides in pertinent part: (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien

---

1. On May 8, 1984, FmHA made an advance in the amount of $9,060.00 to Debtors to refinance existing bank debt with the loan secured by the same chattel property as the operating loan. This loan was not consolidated with the operating loan, however, because the funding came from an emergency source.

impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) a nonpossessory, nonpurchase money security interest in any—

\* \* \* \* \* \*

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;

. . . .

*Id.* In order to avoid a lien under section 522(f), the Debtors must prove the following elements:

1. That the debtor has an interest in the property in question;

2. That the creditor's lien impairs an exemption of the property to which the debtor would have been entitled under 11 U.S.C. § 522(b), in the absence of the lien.

3. That the lien is a nonpossessory, nonpurchase money security interest in the property; and

4. That the lien attaches to goods in either of the specific categories set forth in §§ 522(f)(2)(A), 522(f)(2)(B) or 522(f)(2)(C).

*In re Psick,* 61 B.R. 308, 312 (Bktcy.D. Minn.1985). The only element at issue in this case is the third; elements one, two and four are not questioned.

Because the Bankruptcy Code does not define "purchase money security interest", courts have uniformly looked to the law of the state in which the security interest was created for direction on the question. *E.g., Billings v. AVCO Colorado Industrial Bank (In re Billings),* 838 F.2d 405 (10th Cir.1988); *Pristas v. Landaus of Plymouth, Inc.,* 742 F.2d 797, 800 (3rd Cir.1984). The Minnesota Uniform Commercial Code defines "purchase money security interest" as follows:

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Minn.Stat. § 336.9–107 (1986). The effect of refinancing or consolidating a purchase money security interest is not addressed by this definition and the Minnesota state courts have not confronted this issue. Other state courts have generally held that refinancing a purchase money mortgage does not destroy its purchase money status. *E.g., Powers v. Pence,* 20 Wyo. 327, 123 P. 925, 932–33 (1925). *See Wrightman v. National Bank of Riverton,* 610 P.2d 1001, 1005 (Wyo.1981). *Cf. Haley v. Austin,* 74 Colo. 571, 223 P. 43, 45 (1924) (intent of the parties determines whether a refinanced debt will retain its purchase money character).

The federal courts that have considered directly the effect on a purchase money security interest of refinancing or consolidation are not in agreement, and the Circuits are split. Some hold that refinancing a purchase money loan by paying off the old loan and extending a new one automatically extinguishes the purchase money character of the original loan. *See Dominion Bank of Cumberlands v. Nuckolls,* 780 F.2d 408, 413 (4th Cir.1985); *Matthews v. Transamerica Financial Services (In re Matthews),* 724 F.2d 798, 800 (9th Cir.1984); *Roberts Furniture Co. v. Pierce (In re Manuel),* 507 F.2d 990, 993 (5th Cir.1975). *Cf. Southtrust Bank of Alabama v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240, 1243, *reh'g denied,* 774 F.2d 1179 (11th Cir.1985) (purchase money lender's exercise of after acquired property and further advance clauses transformed purchase money security interest to non-purchase money status). The preceding courts adopt what is called the "transformation rule." Those courts reason that refinancing transforms a purchase money security interest into a non-purchase money security interest because the refinancing does not enable the debtor to acquire rights in the collateral.

Courts rejecting the transformation doctrine reason that a security interest can have a "dual status" and thus a refinancing or an advance of additional funds does

not destroy the purchase money aspect of the security interest. *See Billings,* 838 F.2d at 409–10; *Pristas,* 742 F.2d at 801–02; *First National Bank & Trust Co. v. Daniel,* 701 F.2d 141, 142 (11th Cir.1983); *Geist v. Converse County Bank,* 79 B.R. 939, 942 (D.Wyo.1987) (purchase money security interest after refinancing is preserved to the extent the balance remaining on the original loan is transferred to the renewal note); *Russell v. Associates Financial Services Co. of Oklahoma, Inc. (In re Russell),* 29 B.R. 270, 274 (Bktcy.W.D.Okla.1983); *Holland v. Associates Finance (In re Holland),* 16 B.R. 83, 87–88 (Bktcy.N.D.Ohio 1981). Under the "dual status" rule, a lender's refinancing by renewal does not destroy its previously obtained purchase money security interest. *Geist,* 79 B.R. at 942. The Eighth Circuit has not ruled on this issue.

This court accepts the "dual status" rule because it gives credence to the Uniform Commercial Code. Section 9–107 states that a security interest is a purchase money security interest *to the extent* that it is taken by one making a loan that enables a debtor to acquire rights in the collateral. The courts that follow the transformation rule merely exalt form over substance. *Geist,* 79 B.R. at 942. As stated by the Third Circuit:

> The "transformation rule" is misguided because it fails to consider the import of the critical language in section 9–107— "to the extent." By overlooking that phrase, the "transformation" courts adopt an unduly narrow view of the purchase-money security device. Their reasoning is inconsistent with the Commercial Code, which gives favored treatment to those financing arrangements on the theory they are beneficial both to buyers and sellers.
>
> By contrast, acceptance of the "dual status" rule, with its pro tanto preservation of purchase-money security interests, is more in harmony with the Code. Tolerance of "add-on" debt and collateral provisions, properly applied, carries out the approbation for purchase-money security arrangements and simplifies repeat

transactions between the same buyer and seller.

*Pristas,* 742 F.2d at 801.

Debtors argue *In re Psick,* 61 B.R. 308 (Bktcy.D.Minn.1985) controls in this case because it states "renewals and executions of new security agreements constitute novations which convert the original purchase money security interests to non-purchase money security interests. *Id.* at 312. *Psick* is distinguishable from this case because its holding is predicated upon the concept of a novation. A novation is dependent upon the intent of all parties to extinguish the old obligation and create a new obligation. *Zweibahmer v. Farmers Home Administration (In re Zweibahmer),* 25 B.R. 453, 457 n. 11 (Bktcy.N.D. Iowa 1982). Nothing in the record or arguments of counsel indicates it was the intent of *both* parties to extinguish the original operating loan and create a new one. Moreover, to the extent the *Psick* decision adopts the transformation rule, I disagree.

Another decision in this district, not cited by the parties, but cited in *Psick* is also not applicable. *See In re Slechta,* BKY 3–84–1456, slip op. at 3–4 (Bktcy.D.Minn. June 26, 1985) [available on Westlaw, 1985 WL 17579]. In *Slechta* the loan documents specifically and clearly provided that later advances, coupled with a new Security Agreement, were to amend and replace any earlier loan agreements outstanding between the parties so that no further reference to such earlier agreements·was necessary. Thus, *Slechta* was a case wherein the clear intention of the parties was to execute a subsequent loan and security agreement constituting a novation of earlier notes. To the contrary, in this case there is no language in FmHA's Security Agreements which demonstrates an intention to extinguish the original operating loan by novation as a result of executing a new loan agreement or refinancing the existing agreement. And, as previously noted, to the extent notes and new notes were written, and might have contained such evidence, they were not offered in evidence.

This court's conclusion that refinancing of a purchase money loan does not auto-

matically extinguish the creditor's purchase money security interest in the debtor's collateral requires that the Debtors' motion be denied. When a debt secured by a purchase money security interest is refinanced, and the collateral remains as security for the refinanced debt, and as in this case where additional funds were advanced to purchase new collateral and the amount of the outstanding debt at all times exceeded the value of the collateral purchased with the original advance, neither the debt nor the security interest has necessarily changed its essential character. Thus a creditor who renegotiates a purchase money loan by refinancing or advancing funds for new purchases is not committing the type of overreaching section 522(f) aims to prevent or violating the policy against overreaching which spawned the transformation decisions. The dual status rule is sensitive to the policy concerns of section 522(f) and section 9–107 of the Uniform Commercial Code, and supportive of a public policy encouraging refinancing under circumstances such as those applicable here, in that the creditor has the burden of demonstrating the extent to which a security interest retains purchase money status. *See Geist,* 79 B.R. at 943. In this case, FmHA has clearly met its burden.

### ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT: Debtors have failed to establish that FmHA's security interest in Debtors' collateral is a nonpossessory, non-purchase-money security interest, and Debtors' motion is, therefore, denied.