**In re Mason KEETON and Nora Keeton.**

**Bankruptcy No. 93–31399.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 10, 1993.

Stephen D. Miles, Dayton, OH, for Beneficial Ohio, Inc.

Mitchell W. Allen, Franklin, OH, for debtors.

Thomas R. Noland, Dayton, OH, Trustee.

**DECISION AND ORDERS**

WILLIAM A. CLARK, Bankruptcy Judge.

Presently before the court are the debtors' "Motion to Avoid Lien on Exempt Property" (Doc. # 14) under § 522(f) of the Bankruptcy Code and a "Motion Seeking Relief from Automatic Stay by Beneficial Ohio, Inc." (Doc. # 10). The court has jurisdiction by virtue of 28 U.S.C. § 1334 and the standing order of reference in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), (K) and (O).

*FACTS*

1) In August of 1989, Mason and Nora Keeton ("debtors") entered into an installment agreement with Culligan to purchase a water softener for $989 plus $581 in finance charges.

2) Subsequently, Beneficial Ohio, Inc., purchased the contract from Culligan. Debtors concede that, as a result, Beneficial had a valid purchase money security interest in their water softener.

3) On May 3, 1991, the debtors signed a loan agreement with Beneficial and, by terms of the agreement, granted a security interest to Beneficial in the water softener.

4) The amount financed was $1091.65 and the interest to be paid by the debtors was $477.35. Upon execution of this agreement, the debtors' remaining balance on the first agreement was paid off and additional funds were advanced to the debtors.[1]

5) Beneficial claims that $606 is the amount of its secured claim.

The debtors maintain that, because of the refinancing agreement, Beneficial's security interest in the water softener is a nonpurchase money security interest and subject to avoidance under § 522(f) of the Bankruptcy Code. Beneficial asserts that, despite the refinancing of the debtors' note, its security interest remained a purchase money security interest and is, therefore, not subject to § 522(f).

*CONCLUSIONS OF LAW*

Section 522(f) of the Bankruptcy Code provides that:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

---

1. The parties did not present evidence of either the original transaction's pay-off balance on May 3, 1991, or the amount of additional funds received by the debtors from Beneficial.

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor. 11 U.S.C. § 522(f).

■ The initial issue before the court is whether Beneficial's purchase-money security interest in the debtors' water softener was extinguished upon execution of the debtors' loan agreement with Beneficial on May 3, 1991. Upon this issue there is a split in judicial authority.[2] After careful consideration, this court adopts the position set forth by the Court of Appeals for the Ninth Circuit in *Matthews v. Transamerica Financial Services (In re Matthews)*, 724 F.2d 798 (9th Cir.1984), in which the court held that issuance of a new loan "transforms" the purchase money character of the security interest into a nonpurchase money security interest. The reasoning of the court is based on a straightforward reading of the relevant U.C.C. provisions and supported by the Official Commentary to the U.C.C.

Ohio Rev.Code § 1309.05 [U.C.C. 9–107] provides that:

A security interest is a "purchase money security interest" to the extent that it is:

(A) taken or retained by the seller of the collateral to secure all of or part of its price; or

(B) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral *if such value is in fact so used.* (Emphasis added).

The court's observations in *In re Matthews* are equally applicable to the present case:

The [debtors] did not use the loan proceeds to acquire rights in or the use of the piano and stereo. *They already owned them.* The new security interest in the piano and stereo taken by Transamerica at the time of the refinancing was therefore not a "purchase money security interest" as the Code has defined it. 724 F.2d at 800 (emphasis supplied).

The Ninth Circuit also noted that the Official Commentary to the U.C.C. supported this result. That Commentary states that:

Under this section a seller has a purchase money security interest if he retains a security interest in the goods; a *financing agency* has a purchase money security interest when it advances money to the seller, taking back an assignment of chattel paper, and also when it makes advances to the buyer (e.g., on chattel mortgage) to enable him to buy, and he uses the money for that purpose.

When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. This Section therefore provides that the purchase money party must be one who gives value "by making advances or incurring an obligation": the quoted language *excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt.* (emphasis supplied)

Here, when Beneficial loaned money to the debtors in May 1991, it was not advancing money to the seller (Culligan) nor was it enabling the debtors to buy a water softener; the debtors had already purchased the water softener. Therefore, this court finds that Beneficial's security interest in the debtors' water softener is a nonpurchase money security interest and subject to the provisions of

**2.** *See, e.g., Matthews v. Transamerica Financial Services (In re Matthews)*, 724 F.2d 798 (9th Cir.1984); *Hipps v. Landmark Financial Services of Georgia, Inc. (In re Hipps)*, 89 B.R. 264 (Bankr.N.D.Ga.1988); *Smiley v. Feldman Furniture Co. (In re Smiley)*, 84 B.R. 6 (Bankr.D.R.I. 1988); *In re Wandler*, 77 B.R. 735 (Bankr.D.N.D. 1987) (cases finding purchase money security interest is extinguished or "transformed" into nonpurchase money security interest).

*See also Billings v. Avco Colorado Industrial Bank (In re Billings)*, 838 F.2d 405 (10th Cir. 1988); *Pristas v. Landaus of Plymouth, Inc. (In re Pristas)*, 742 F.2d 797 (3rd Cir.1984); *In re Hemingson*, 84 B.R. 604 (Bankr.D.Minn.1988); *Geist v. Converse County Bank*, 79 B.R. 939 (Bankr.

11 U.S.C. § 522(f).[3]

Many courts have not adopted the approach of *In re Matthews* and have been critical of its so-called "transformation" rule:

> [T]he "transformation" courts adopt an unduly narrow view of the purchase-money security device. Their reasoning is inconsistent with the Commercial Code, which gives favored treatment to those financing arrangements on the theory they are beneficial both to buyers and sellers. *Pristas v. Landaus of Plymouth, Inc. (In re Pristas)*, 742 F.2d 797, 801 (3rd Cir.1984)

> The basic problem with the automatic "transformation" rule is that it discourages creditors who have purchase money security interests from helping their debtors work out of financial problems without bankruptcy and without surrendering the collateral securing the debt. *Billings v. Avco Colorado Industrial Bank (In re Billings)*, 838 F.2d 405, 409 (10th Cir.1988).

This court believes that it is primarily the language of the relevant statutes that must be consulted in reaching its conclusions and that policy considerations, such as those advanced in *In re Pristas* and *In re Billings,* are the domain of Congress rather than this court.

 Beneficial's second argument is that, even if its security interest is a nonpurchase money security interest, the debtors' water softener is not a "household good" within the meaning of § 522(f) of the Bankruptcy Code. Beneficial maintains that personal property must be "necessary" to the debtors in order to qualify as a household good and cites *In re Wheeler,* 140 B.R. 445, 446 (Bankr.N.D.Ohio 1992) in support of its position:

> The fact that certain items are found in many or most homes does not automatically qualify those items for household goods status. Neither does the fact that a debtor

may use those items in the debtor's household or personal activities. Rather, a factual determination must be made on a case-by-case basis. This Court adopts the "household goods" definition found in *In re Barnes,* 117 B.R. 842 (D.Md.1990). In that case, the United States Bankruptcy Court for the District of Maryland defined "household goods" as "items of personal property reasonably necessary for the day-to-day existence of people in the context of their homes." [4]

There is, however, nothing in the language of § 522(f) containing the requirement that property be "necessary" to a debtor before it may be considered a household good. In discussing the rationale of *In re Barnes,* the Fourth Circuit has pointed out that:

> The "necessity" requirement is derived not from the language of the statute itself, but from a passage in the House Report to the Bankruptcy Reform Act of 1978 which emphasizes that the purpose of the Bankruptcy Code is to ensure debtors a fresh start after bankruptcy. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 126, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6087 ("[The bill] adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start."). The courts that have imposed a "necessity" requirement have extrapolated from this statement of general purpose the requirement that household goods must be necessary to a fresh start to be eligible for lien avoidance....

> We reject this definition of "household goods" because it is without foundation in the statute. Section 522(f)(2)(A) does not limit those household goods that are eligible for lien avoidance to only those goods that are necessary to a debtor's fresh start. It allows debtors to avoid liens on *all* exempt household goods that are held

---

D.Wyo.1987) (cases finding purchase money security interest status continues).

**3.** This court specifically reserves the issue of the effect of a mere renewal of a purchase money security interest loan where no additional funds are advanced nor additional collateral provided as security.

**4.** On the basis of this definition, the court in *In re Wheeler* found that fishing rods, sleeping bags, tents, tools, and a camera are not household goods.

primarily for personal, family, or household use. Congress, in effect, decided that all such goods are important to a debtor's fresh start following discharge from bankruptcy, and it effected that decision by the inclusion—without limitation—of "household goods" in the list of personal property eligible for lien avoidance. *McGreevy v. ITT Financial Services (In re McGreevy)*, 955 F.2d 957, 960 (4th Cir.1992).

For the same reason, this court also declines to adopt the definition of household goods contained in *Barnes* and *Wheeler* and will utilize the definition put forth by the Fourth Circuit:

> We ... hold that "household goods" under section 522(f)(2)(A) are those items of personal property that are typically found in or around the home and used by the debtor or his dependents to *support and facilitate day-to-day living within the home,* including maintenance and upkeep of the home itself. *Id.* at 961–962 (emphasis supplied).[5]

It is quite clear that the debtors' water softener is found in the home of the debtors and used to support and facilitate their day-to-day living within the home and, therefore, falls within this definition of a household good.

At the hearing in this matter, the parties agreed that the debtors' water softener has a value of $400.00. It is not clear from the debtors' schedules, however, whether they are claiming a total exemption of $200 in the water softener or whether each debtor is claiming a $200 exemption under Ohio Rev. Code § 2329.66.

As a result, it is hereby ORDERED that the debtors shall amend their schedules by December 1, 1993, to clarify any ambiguities with respect to their claim for exemptions.

It is also ORDERED that a continued hearing, regarding the *extent* to which Beneficial's lien is avoidable under § 522(f) will be held on *Tuesday, December 7, 1993, at 11:00 A.M.*

Finally, it is ORDERED that Beneficial's motion to modify the automatic stay of § 362 is held in abeyance pending the conclusion of the continued hearing under § 522(f).

---

5. In adopting this definition the court was concerned that there be a requirement of a functional nexus between the good and the household:

> Such a requirement, we believe, is necessary for the term to have the ordinary, common-sense meaning that was intended by Congress....
>
> We conclude that the requisite functional nexus exists where—and only where—the good is used to support and facilitate daily life within the house. It is the household good's use *for these purposes* that distinguishes it from a good that is merely located and used within the house. Pots and pans are household goods *because* they are used to support and facilitate daily household living; a model car collection, by contrast, is not a household good because it serves no such purpose. *In re McGreevy, supra,* 955 F.2d at 961.